[2001-Ohio-56.]

APPENDIX to the State of the Judiciary Address by Chief Justice Thomas J. Moyer, delivered before a Joint Session of the Ohio General Assembly, March 20, 2001.

**http://www.sconet.state.oh.us/Communications_Office/Speeches/2001/2001soj.asp**

## RUTHERFORD *v.* M'FADDON[*]

(Liberty Hall and Cincinnati Mercury, November 3 and 10, 1807.)

Supreme Court of Ohio, Steubenville, Jefferson County.  1807.

1.  *Acts of the general assembly are subservient to the constitution of the state.*

2.  *The courts of the state are bound to support the constitution and laws of the state and cannot be bound by both the constitution and a conflicting law.*

3.  *The courts have the authority to determine the constitutionality of an act of the general assembly.*

4.  *Where an act of the general assembly is repugnant to the constitution that act is from the beginning void and of no binding effect and the courts have the duty to declare it no law.*

---

[*]This opinion is reprinted from Ervin H. Pollack, Ed., Ohio Unreported Judicial Decisions Prior to 1823 (Allen Smith Company, Indianapolis 1952), at 71 *et seq.*

The Introduction to Professor Pollack's book contains an interesting history of the reporting of opinions in Ohio in the nineteenth century. The Historical Comment to *Rutherford* is also worth reading for its description of the circumstances under which *Rutherford* was decided and the General Assembly's response to the judgment. Ohio Unreported Judicial Decisions Prior to 1823 is available to the public in the library of the Supreme Court of Ohio.

The Reporter's Office wishes to thank Elizabeth A. Harmon, a John Glenn Institute intern, for her help in preparing the text for publication.

5.      *Where the constitution provides that the right of jury shall be inviolate the meaning of right is that right existing at the time the constitution was adopted.*

6.      *The right of trial by jury which existed immediately prior to the constitution of 1802 required a jury trial in all civil cases of whatever nature, except simple contracts, and in all such, where the cause of controversy was of more than twenty dollars value.*

7.      *Section 5 of the act defining the duties of justices of the peace and constables, in criminal and in civil cases, insofar as it extends the jurisdiction of justices of the peace in civil cases, to any sum not exceeding fifty dollars, is repugnant to article 8, section 8 of the constitution of Ohio and therefore has no binding effect.*

OPINION

**HUNTINGTON, C.J.** The only question here made is, whether so much of the fifth section of the act, defining the duties of justices of the peace and constables, in criminal and in civil cases, as extends the jurisdiction of justices of the peace in civil cases, to any sum not exceeding fifty dollars, be constitutional, and consequently whether it has any binding force.

Though this is the question put for the court to determine, I shall extend my enquiries and examine into the right of the court to determine upon the constitutionality of an act of the legislature. This is a respect due to the legislative body. It will be satisfactory to the people to know the grounds on which the decision rests. The right has been questioned, and if the courts do not possess it, they ought not to enter upon the consideration of the question in the case at bar. It is not matter of surprise, that doubts of this power in the courts of law, have been entertained by those who have not had leisure or opportunity to investigate the subject, or having given it only a hasty and superficial examination: by such persons it has been represented, that the exercise of this power would operate to

repeal the laws: that it would be an assumption of legislative authority, and that it would be judging over the head of the legislature.

Let it be distinctly understood, that the court claims no right of altering, repealing or setting aside any law whatever: they do not consider themselves vested with any legislative authority. On the contrary, it is their duty, as well as their aim, to keep the judicial and legislative functions separate and unmixed. It is their duty, peculiarly, to *expound, construe* and *declare* the law; and in discharging this duty, they will not be guilty of the solecism, of declaring a *law* to be unconstitutional; but when the case occurs, they must, in compliance with their duty, compare the legislative *act* with the *constitution,* and if they find such act contrary to the constitution, or prohibited by it, as, in such case, the *act* is, from the beginning utterly void and of no binding force, it is the duty of the court to declare it *no law.*

For the more correct understanding of the principles upon which the decision of the court is founded, it will be necessary to enquire what is the end and design of a written constitution.

A constitution is defined to be a compact of the people, declaring what form of government they choose to live under; distributing the three great and necessary deposits of delegated authority among the three branches of government, and defining the limits of each. Our constitution, after specifying the powers delegated to each branch and prohibiting the exercise of others, has declared, that "all powers not hereby delegated, remain with the people." The object of every constitution is to secure the liberty of the people, by keeping the legislative, executive and judicial powers separate and distinct from each other, by restraining each within the limits assigned to it, and by preventing all encroachments on each other, or on the rights of individuals. And I shall assume it as an incontested position, that our constitution (allowing it to harmonize with the constitution and laws of the U. States) is the supreme law of the land, and

paramount to any legislative act: it follows, that any act in violation of the constitution, or infringing its provisions must be void, because the legislature, when they step beyond the bounds assigned them, act without authority, and their doings are no more than the doings of any other private man. To illustrate the position, let us suppose the general assembly to pass an act, declaring the punishment of forgery committed within this state, to be transportation to the province of Canada. The 17th section of the 8th article of the constitution declares, "that no person shall be liable to be transported out of this state, for any offence committed within the state"; suppose further, a man to be regularly convicted of the crime of forgery, before a court of competent jurisdiction; can the court sentence him to be transported?—If they are bound by the *act,* they *must* do it—if they are bound by the constitution, they *cannot:* it is impossible they should be bound by *both,* because they are in direct contradiction. The court is obliged to take an oath to support the constitution—they have taken it: what shall they do? They must perjure themselves, to support the *act.* To support the constitution, they have only to discharge the official duties properly belonging to them, and assigned them by the constitution itself; they have to decide what is the law—and in deciding this question, the act or the constitution must give way. The constitution, it is clear, cannot be adjudged void—and it is equally clear, that the *act* which is inconsistent with it, must be *no law.*

To the legislature belongs the sole power of making laws; to the judiciary, the sole power of expounding them. So little power is vested in the executive by our constitution, that no danger can be apprehended to our liberties, while the other two branches keep within their constitutional limits: Part of the executive power being committed to the legislature—that of appointing all the high officers in the government, not elected by the people, it has been supposed, that the judiciary received their *authority,* as well as their *appointments* from the legislature: and consequently were bound to carry into effect, their *acts,* whether

constitutional or otherwise. This mistake, which I apprehend to be the chief source of the erroneous opinions entertained on this subject, arises from not considering the judiciary, as a co-ordinate branch of the government deriving its authority from the constitution. That instrument, it is true, has empowered the legislature to mark out the jurisdiction, and detail the duties of the several courts; but this power, by no means implies a right to deprive the judiciary of that authority which the constitution vests in it, and requires it to exercise.

The people can never be secure under any form of government, where there is no check among the several departments: in ours, the check upon the executive and judicial officers, for corruption or misbehaviour in office, is an impeachment; there is no check that operates on the *members* of the legislature out of their own body—and all the check upon the *proceedings,* that exists in any other body, arises from the regular exercise of the constitutional powers of the judiciary; for it must be noticed, that the courts can *originate* no question involving the constitutionality of a law, and of course can *decide* no such question, unless it comes legally before them for a judicial decision. This I trust, is a full answer to the objection arising from the danger suggested, that our laws may be set aside, and the legislative power usurped by our courts, provided they have a right to determine the constitutionality of a legislative act, besides, the suggestion presupposes the highest degree of depravity in courts, without the least possible motive. What inducement, what interest, or advantage could the judges of a court propose to themselves, from the corrupt exercise of a power, which by suspending the laws, would have *their* persons, property and reputation equally unprotected with those of their fellow-citizens?

It is contended that the court by taking upon themselves to decide this question, casts some imputation upon the legislature; that the legislature are as competent to determine the constitutionality of their own acts, as the court, and that a decision against the constitutionality of an act, implies error in the assembly

that passed it. No one will contend that the legislature, *may* not, at times, commit mistakes from haste or inattention—the records of every session prove this—the repeal, alteration and amendment of laws, shew the sense of successive assemblies upon this point; and it would seem as probable that provisions inconsistent with the constitution, might be inadvertently introduced into a law, as that errors of any other description should creep in—in either case the judgment of the court imputes no blame to the legislature:—It frequently happens that two *acts* of the legislature are found in direct hostility with each other, yet, neither expressly repealed; the court is called upon to determine which is the law, as both cannot stand: both are enacted by the same authority; for aught appearing on the face of the laws, both are equally binding on the court; yet the court *must* decide between them—Is it an imputation on the legislature to make this decision? And how does it differ, in application to this point, from a case where a law clashes with the constitution? The most fair and correct position is, that in framing laws, the legislature ought to take into consideration their bearing upon the constitution, as well as upon the existing laws; and that their interference with one or the other, when it happens to take place, should be corrected by the courts in the course of a regular judicial investigation: a contrary principle might not only set our laws and our constitution at variance, but produce the most mischievous confusion in the laws themselves.

If we resort to consequences, to throw further light upon the subject, we will find that going on the ground the legislature *can* pass unconstitutional acts— that they are the sole judges of their constitutionality—and if unconstitutional, that there is no remedy; then indeed is our constitution a blank paper: there is no guarantee for a single right to citizens; your executive and your judiciary, it is true, are bound by the constitution, where it is not made to bend to the laws; but slavery may be introduced; a religious test may be established; the press may be fettered or restrained; the trial by jury may be abolished; *ex post facto* laws may

be made; standing armies may be raised, and the whole train of evils against which our constitution meant to provide, may be gradually let in upon us. I speak not of these consequences as likely to follow at present, or altogether; but with a view to point out the necessity of guarding the constitution with the most scrupulous vigilance, and to shew that on the constituted authorities is this duty more peculiarly incumbent.

I now come to the point in issue, premising that I firmly believe it was not the intent of the legislature, to infringe the constitution, by extending the jurisdiction of justices of the peace, and that if they should be convinced any part of the law in question is unconstitutional, they will correct the error.

For the purpose of ascertaining what was the right of trial by jury when our constitution was framed, I shall advert to the second article of compact, in the ordinance of congress, for the government of the territory of the United States, northwest of the river Ohio, passed the 13th of July, 1787. In this article was guaranteed to the inhabitants of the territory the *benefit* of the writ of *habeas corpus,* and of the trial by jury; of a proportionate representation of the people in the legislature, and of judicial proceedings according to the course of the common law, with many other important rights. This ordinance was the constitution of the territory, and the six last articles, called the articles of compact, are considered as still binding on the state. The vague phraseology in which these rights are declared in the 2d article, leave room to believe that congress intended to vest in the territorial legislature, a discretion to point out the manner of enjoying the benefits enumerated—this congress might safely do, so long as they reserve the power of repealing any territorial law. The territorial legislature accordingly might regulate the use of the *habeas corpus,* and the apportionment of representation according to their own judgment, for there was nothing to guide them in the ordinance:—It was the same in respect to the trial by jury, the benefit of which was secured in general terms. We find the territorial legislature from

7

time to time limiting and defining the jurisdiction of justices of the peace, in both civil and criminal cases. It was necessary for them so to do, for it never could have been completely settled, how far any of these benefits should extend, without the interposition of the legislature, or perhaps the judgment of a court of law, where the legislature left them unsettled. The territorial legislature did, in fact, proceed to exercise their discretion in securing to the people these benefits, in all such cases as they supposed necessary, and the benefit of the trial by jury was retained in all cases, where the nature or amount of the controversy was such as to make it worth the expence [*sic*] and trouble of a decision through the medium of a jury. The jurisdiction of justices of the peace, was marked out and limited; they had no authority to summon a jury, and at the period when our constitution was framed, they had a right to try certain criminal cases of small magnitude, and civil cases of mere contract, not under seal, to the amount of twenty dollars.

The 8th section of the 8th article of the constitution; by which the constitutionality of the 5th section of the law in question is tested, is concisely and emphatically expressed *"The right of trial by jury shall be inviolate."* To what right could the framers of our constitution have referred? To a right then existing, and which every citizen was entitled to; a right known and recognized by the laws then in force—or an indefinite right, which might hereafter be established, and be varied or fritted away, as succeeding legislatures and courts may think proper? Common sense gives the answer; they must have meant none other than a right then known and established, otherwise this constitutional provision is destitute of force; for had it been designed, not to bind the legislature, but only to give them power of allowing that right in such cases as they should think proper, it would have been idle and superfluous, because the legislature would have possessed the power without it. If there was a right then existing to which the 8th section of the article refers, let us enquire what that right was, at the time of the framing [of] the

constitution. It is conceded on all hands, that the right of trial by jury, to which every citizen was entitled at that period, extended to all civil and criminal cases, except such as were expressly committed to the jurisdiction of justices of the peace, and that their jurisdiction embraced only some small criminal offences, and cases of contract without seal where the demand did not exceed twenty dollars.

The right of trial by jury, then, in all civil cases of whatever nature, except simple contracts, and all such, where the cause of controversy was of more than twenty dollars value, and in all criminal cases except the few committed to the cognizance of a single magistrate, was the right to which the constitution refers, and the right which it meant to preserve inviolate. Has the act in question gone so far as to violate that right? In the 5th section of the act, the jurisdiction of justices of the peace is extended under the limitations and restrictions therein after provided, to any sum not exceeding fifty dollars. If these restrictions and limitations do not save the unconstitutionality of this section, I shall be of opinion that the clause which extends the magistrates jurisdiction is not law. There is but one provision that is relied on as affecting the constitutionality of that clause—it is contended that the right of appeal, by that provision allowed, from the magistrate's judgment to the court of common pleas, where a jury is empannelled [*sic*], purges the violation of the original right, by giving the party afterwards, a right to another trial, where he may have the benefit of a jury, if he pleases, and he may eventually have his cause decided by his peers—this reason is far from satisfactory. I have no doubt but the legislature may prescribe any reasonable preliminary steps, to be taken by the parties, before their cause shall come to trial. It is necessary in many instances that this should be done, to secure to the parties a remuneration for the trouble and expence which may be occasioned by the unjust or vexatious prosecution of their causes, whether in the institution, defence or appeal of them? This however, might be carried to a length which would amount to a denial of justice. Should bail, for instance, be required by law to such

9

an amount, as no common person could procure: in whatever stage of a suit such bail should be demanded, it would effectually preclude the party from his benefit of trial by jury, by throwing such embarrassments in the way of enjoying it, as he could not surmount: it is not to be presumed that the legislature would knowingly and willingly do this; but I mention it, to shew that the right of trial by jury may be violated, by other means than by expressly prohibiting it: However vexatious it may be to compel a party to submit to the delays and expences of a trial before a magistrate, and to give bond for appeal before he can enjoy the right of trial by jury, I rely more on the emphatic word *trial* than upon any embarrassments thrown in the way of his right by the statute; I rely upon it as shewing conclusively that the right of appeal, does not in any manner help out the jurisdiction of the magistrate; whatever restrictions may be imposed on the parties to a suit before they come on to trial of the merits of their cause, no law, no rule of court can deprive them of the right of having the merits tried by a jury, in cases where that right is secured by the constitution—one of those cases I believe to be, where the demand or matter in dispute exceeds twenty dollars:—were the language of the constitution "the right of *final decision* by jury shall be inviolate," the case would be different: these are not the words; it is the *right of trial,* that is to be inviolate. What is a trial? It is an investigation of the cause of complaint; the defence and judgment of the court upon the hearing of the whole matter—Is not this done by the magistrate when he takes cognizance of a cause, hears the parties, examines the evidence, and pronounces judgment? Does the appeal alter the nature of the trial, and make that no trial, which would have been a trial had no appeal taken place? It is not the right of appeal, but the right of trial, which the constitution guarantees, and in my opinion, it is as much a violation of that right, to compel the citizen to proceed to trial before a magistrate, without the intervention of a jury, in cases where the demand exceeds twenty dollars, as it would be to prohibit him that right in the court of common pleas in similar cases.

The reasons for my opinion, that the framers of the constitution meant to limit the bounds of those cases which might be tried without a jury, and not merely to leave it to the future legislatures to do it, have been given; if those reasons are not conclusive, then that part of the constitution, which was intended to secure to the people the right of trial by jury, is no security at all; for if the legislature may abridge the right within narrower limits than they found it after the constitution was framed; if they can take it away in cases under fifty dollars, they can take it away in cases of five thousand dollars—if they can take it away in cases of trespass—they can take it away when the title of land is in question; and I do not conceive it to be any answer to this reasoning, to say, that the legislature, being the immediate representatives of the people, will never so far forget their duty, as to destroy this important right. The constitution intended to secure it inviolate— and it is wholly immaterial as respects the right, whether it is violated in a lesser or greater degree. It cannot be presumed, that the convention meant to leave to the discretion of the legislature, or to the courts, the limitation or restriction of a right, which the people possessed, and which is justly appreciated as the great palladium of their liberties, inasmuch as whenever their rights and privileges are called in question, they have through the medium of a jury trial, the determination of that question themselves.

If we resort to arguments of expediency, either to explain a doubtful clause of the constitution, or to find the true construction of our laws, we shall see that it is of infinitely more importance, to preserve the trial by jury, the great bulwark of our liberties, than to guard against the consequences of a judgment which by setting aside some of the decisions of magistrates, may tend to open disputes, that have been supposed to be settled. This, though an evil to be avoided, where it can be done legally, does not strike at the foundation of any of our rights; it may be an inconvenience to a few individuals, and there the mischief ends; but it should be kept in mind, that in proportion as you encroach on the trial

11

by jury, in the same proportion you take away the rights of the people. You take the right from the many, and bestow it on the few, and whether you build up the power of justices of the peace, or of higher courts upon the ruins of the jury, it is equally a departure from the principles of a republican government, and a step towards a more aristocratic form.

An objection has been stated which is supposed to run parallel with the argument in favor of the extent of trial by jury, as claimed by the counsel of the plaintiff in error. It is said, that if the right of trial by jury is extended to all cases, where it might have been claimed at the period of our going into a state government, the chancery jurisdiction of our courts is destroyed, because, sitting in chancery, they proceed to hear & determine cases without a jury, that could not have been tried antecedent to that period, without the intervention of a jury. The three first sections of the third article of the constitution, expressly give the courts jurisdiction in equity, as well as law. This jurisdiction, from its nature, precludes the intervention of a jury in strict cases of chancery: but when certain facts come in issue, even in chancery cases, these facts are ascertained by the verdict of a jury, in a court of law upon an issue directed out of chancery. It is a sufficient answer, however, to the objection, to say, that the same instrument which guarantees the right of trial by jury, also vests in the court the power of trying such causes as came before them, sitting as a court of chancery, according to the known rules and established proceedings of such courts.—I have considered this case as depending upon the construction of our own constitution and laws, without quoting the authority of other decisions, though well aware, that in the first point I am supported by the judgment of the supreme court of the U.S.[1] and of every court of the individual states, which has had the question before them, all of whom have decided that the courts of law possess the power of enquiring into

---

1. Reporter's Note: This is an apparent reference to Marbury v. Madison (1803), 5 U.S. (1 Cranch) 137, 2 L.Ed. 60.

the constitutionality of legislative acts. Notwithstanding the high respect that is due to such authorities, I should not have hesitated to give a different opinion had I been convinced the decisions were erroneous.

As to the second point considered, I know of no authorities to direct the judgment of the court.—If the question was doubtful, I should consider it my duty to lean towards the side which appeared to favor the rights of the people, by securing them the most important privileges; and I know of none more important, than the right of trial by jury. If, by deciding the first question in favor of the jurisdiction of the court—they are establishing the power of the judiciary; by deciding the second against the constitutionality of that part of the act which extends the jurisdiction of justices of the peace, they are abridging the power and authority of the judiciary, and restoring it to the people.

I am of opinion, that the judgment of the court of common pleas, is erroneous, and ought to be reversed.

**TOD, J.** (Concurring). In the consideration of this subject, two principles present themselves for judicial determination.

lst. Has this court, sitting as a supreme judicial court for the state, the constitutional right of declaring on the constitutionality of a legislative act?

2d. Is the act, or any part thereof, entitled "An act, defining the duties of justices of the peace and constables, in criminal and civil cases," in contravention to the constitution of this state?

Existing as there does, to some considerable extent, a diversity of opinion as to the powers of the court to test legislative provisions by the constitution, it will become necessary, at least it will be received as an apology, that the consideration of the court be directed to that subject.

Among the various duties which are imposed on any court, that of guarding and protecting the constitution, is of importance paramount to all others. It is deemed an instrument so deeply connected with the rights of a free people,

13

that all those who are permitted to participate in the honors, powers, duties and emoluments of any office whether of primary or subordinate consequence, are required, under the solemnities of an oath, to support it. If it is thought prudent to test the attachment of ministerial officers to the constitution, by the taking of an oath to support it, the inference will not be deemed unreasonable, nor forced, that the highly responsible judicial character is cloathed with power of preventing encroachments on it.

The judges of this court have individually taken the same oath, and the further oath to administer justice agreeably to the *laws of the land.* In this oath we discover an epitome of the powers and duties of the court. When the law imposes a duty, it necessarily affords the power of fulfilling that duty. If justice is to be administered in conformity to law, it must be in compliance with the provisions in the constitution—since the constitution is the supreme law.

There is no section or paragraph in the constitution which vests exclusively either in the legislative or judicial branches of government, the power of protecting it from infraction or violation.

We have but two classes of citizens whose official duties, very immediately have relation to the constitution—the one is, those who compose our legislative assembly—the other are judicial courts.

The characteristic duty of the first, is to enact laws—of the second is to give an exposition of those laws. If the efficacy cannot be given to legislative acts, without protruding on the limits of that supreme law, they are to be declared a *dead letter.* It is unquestionably the duty of the legislature, to act within the constitution; and the regard which is usually manifested for its inviolability, is evident and merits our confidence. But the haste with which laws are passed, precludes the possibility of that deliberate attention to constitutional objections, which the nicety and importance of the subject makes requisite. A bill is often

drawn and often urged to a final passage, without comparing its provisions with the constitution.

From a candid and attentive perusal of the constitution, it will evidently appear, that the intention of its framers, was to vest the power in question, in the judicial courts.

In art. 3 sec. 1 of the constitution, it is provided that "the judicial power of the state, both in matters of law and equity, shall be vested in the supreme court, &c." This article must mean something—it would be idle to call it a dead letter. It is couched in terms positive and mandatory. Its obligation cannot be evaded. It expressly cloaths [*sic*] the judiciary with the power of deciding on all "matters of law and equity." And it must be contended, that the constitution is now a law, or the courts are bound to test all matters of law by it.

In the first sec. 8th art. of the constitution, the great objects to be secured and perpetuated, are in strong terms pointed out, "That all men have certain natural inherent and unalienable rights, among which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety." Let this section be anal[y]zed. Does it, in itself guarantee the enjoyment of those unalienable rights, or does it simply point to them as rights to be secured by legislative provision? The answer is too obvious to be mistaken. The people in this, their fundamental law, have entered into a solemn covenant with every individual citizen, that those inherent rights shall be protected, even against the encroachments of legislative authority. If a law was to be passed, inflicting death on a person convicted of larceny—or that a particular class of citizens should have the exclusive privilege of acquiring and possessing property, and that all others should be proscribed and doomed to exile; could not the devoted victims of such legislative tyranny, claim, with a confidence inspired by the constitution, the interfering power of the judicial

15

courts? Could they not entrench themselves within the ramparts raised by the constitution, and then in safety bid defiance to such attempts?

If an attempt by law, should be made to introduce slavery—to contract or interfere with the rights of conscience—to compel an attendance on public worship, or to maintain any ministry—to give preference to any particular mode of worship—to establish a Religious test as a necessary qualification to office—to discourage the practice of religion and morality, and diffusion of knowledge —the establishment of schools and other means of instruction—to close the doors of the printing presses—to prohibit the indisputable right of speaking, writing or printing on any subject, or to remove the liability for an abuse of those rights—to take away the right of trial by jury in criminal cases—to suspend by a general and unlimited law, the writ of habeas corpus—to imprison for life, the person of a debtor, whose only portion was absolute penury and want—to give laws a retrospective operation —to impair the validity of contracts—to work corruption of blood—or forfeiture of estate—to prohibit assemblages of the people, peaceably made, to consult their common welfare: In all of these cases, I humbly conceive, that courts have not only the power, but it is their indispensible duty, on application according to the due and ordinary course of law, to cause "right and justice to be administered without denial or delay."

In the exercise of this power we are protected by the 7th sec. of the 8th article of the constitution. "That all courts shall be open and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by the due course of law, and right and justice administered without denial or delay."

It has been said and will probably be again said, that the legislature has the sole right of determining on all constitutional questions—and that a mere passing of a law decides its [constitutionality—Editor].

This extraordinary position shall share some attention. I have endeavored to shew that legislative acts are subordinate to, and must be tested by,

constitutional provisions. This is advanced as a general principle in all governments, in which there are written constitutions. If a written constitution is the supreme law, which is a warranted conclusion, all other laws which are *directly* or *constructively* in opposition to it, can have no binding efficacy—they are as though they were not. If legislative acts are to all intents obligatory on the court—the constitution is a subordinate instrument—liable to be annulled, altered and amended by legislative supremacy. Their acts would not only be equal, but superior to that charter, which has the sanction of "We the people do ordain and establish."

From my view of this branch of the subject I hold myself as strongly bound to test all legislative acts by the constitution, as I do to administer justice without partiality.

We come now to the consideration of the second question:—Is that part of the act entitled "An act, defining the duties of justices of the peace and constables, in criminal & civil cases," which gives jurisdiction to justices of the peace in civil cases, to the amount of fifty dollars, excepting in cases of voluntary confession, contrary to the spirit and evident meaning of the constitution of this state?

I shall in the first place, take into consideration that part of our constitution, which expressly provides, "that the right of trial by jury shall be inviolate."

It is to be remarked, that this right is guaranteed by that power which confessedly is the supreme power, *the people.* It is not a privilege secured by a legislature, which may be withdrawn when legislative pleasure shall will it. It is elevated above legislative reach, and in its nature so superior and supreme, as not to be touched, so as in the smallest degree to [not be—Ed.] impaired. By direct attacks it is not to be destroyed; neither by construction is it to be fritted away. If violated by the enacting power, either intentionally or unintentionally, the judicial

power should interpose and save it: If wantonly infringed by the courts, the all-chastising power of impeaching, will remove from it the danger of overthrow.

Did the framers of the constitution have allusion to a right which then existed, and which then was enjoyed; or to a right undefined and uncertain, which then had no real and efficient existence; which might or might not, by a posterior legislature, be created and defined, or until that was done, must stand as a monument of the classic correctness and consummate wisdom of its authors?

The language itself is forcibly impressive, and incontrovertibly imports the idea of an existing right; and the framers must have had in view an amendment to the constitution of the United States as well as a law in operation at the time our state constitution was adopted. It is a simple proposition, and carries a conviction to the mind which no evasion can obviate. Even the possibility of a doubt, it would seem is precluded. "The right" *ex vi termini,"* has for its object something which actually is, whether precisely known or not. To use such language in relation to a right which has no existence, but which possibly may be generated by future legislatures, would be the height of absurdity.

Suppose the language had been "the right of trial by jury is taken away." It would not be necessary for the legislature to define that right before the deprivation would attach. It must appear evident that the right existed at the adoption of the constitution; and the full enjoyment of that right claims the unqualified protection of the constitution. Having such a sanction and guarantee, it must be a complete and perfect right; and so long as the constitution remains unaltered, it will admit of no addition, diminution, modification or qualification whatever.

It remains for us to ascertain what the right of trial by jury was, when the constitution took effect. The framers of that instrument, from the use of such unequivocal language, must have had in view some principle, usage or law which related to the trial by jury. It most conclusively results, that the constitution of the

18

United States, or the then existing laws of this country, or both, were considered when providing for the safety of that right. Let us resort to which we will, either is of such authority as to give a satisfactory definition of the right.

Among the amendments to the constitution of the United States, we find the trial by jury secured in all cases where the sum in demand exceeds, 20 dollars. It is a matter of little consequence, in my view of the subject whether that clause of the constitution of the United States is obligatory on the respective state courts or not. It is a high species of evidence, that the intervention of a jury in all cases where the amount in controversy exceeds twenty dollars, is, in its effect, salutary and safe—and that it is in consonance with spirit of a wise and just republic. And it would not be a far-fetched inference to say that the conventioners viewed the amendment in the constitution of the United States, as binding on them as framers of a constitution, so far at least, that the right therein defined should by the people be solemnly declared inviolate. Since this court must declare the extent of the right, it cannot be deemed arrogance of power or mal-feasance in office, to consider that part of the constitution of the United States, as meriting consideration.

Should this be deemed inconclusive, we will call to our assistance the law of the territory, giving jurisdiction to justices of the peace, which was continued in force by the constitution of Ohio.

The act alluded to, restricted the jurisdiction of justices in all civil cases to twenty dollars. It therefore followed of course, that in all cases where the demand exceeded that sum, the trial by jury was secured. For a number of years it had been enjoyed; and that enjoyment remained uninterrupted, till the act under the constitution of this state, which extended justices jurisdiction to thirty-five dollars was passed.

When an individual or a body of men, express themselves by words, they are to be understood generally in their usual acceptation. Were a legislature or the

people to speak of the right of free suffrage, without using any qualifying expressions, they must have reference to a right as then enjoyed and understood. If this were not the rule as applied to written constitutions, their provisions would lose the quality of an unerring rule, and yield to the authority of legislative omnipotence.

Since the right of trial by jury, in almost all cases, where the sum in demand exceeded twenty dollars, was secured to suitors, at the time the constitution was adopted, and that too by a long established law, which law must have been considered by the convention, for it made express provision for its continuing in force—it is not a monstrous inference, that the constitution intended to guarantee that right, as it was then enjoyed.

It is said, however, that the act in question does not take away the right of trial by jury, nor any way impair it, as it allows appeals in all cases from the adjudication of justices of the peace, to the common pleas.

This position requires consideration, since it involves in it the safety and efficiency of the constitution itself.

From what has been urged already, it will appear that the constitution is a rule, prescribed by the exclusive sovereign power in the state—the people. It imposes obligation on all, and extends protection to all. On the inviolability of it depends the existence of our government. Every attack on it is one step towards a revolution. There is but one way in which it can be assailed rightfully, and that is by the very power which ordained it.

If the right in question is a constitutional right, it is a perfect one—and is protected by the constitution. No legislative aid is necessary; and every legislative act on the subject is useless—therefore nugatory.

Whenever a cause is to be tried, where the demand exceeds twenty dollars—it, in the first place, is to be tried by a jury. If either party to a suit

claims a jury trial, he is entitled to it before that court in which the cause is to be first heard on the merits.

The act in question, by securing to either party the right of appeal, does not expunge from it all constitutional objection. The artifice resorted to, for removing constitutional objections, is a secret attack—slow in its progress, but sure. The more secret—the more dangerous—the more direct and open—the more easy and triumphantly to be combatted.

A constitutional right is a right not to be shackled or limited by legislative interference.

As the right was understood, at the framing of the constitution, in cases where the demand exceeded twenty dollars—the suit must be instituted before the court of common pleas where the trial by jury was in full exercise. Such was the right of trial by jury then. What is that right under the existing act, defining the duties of justices of the peace, &c.

If it is at all restricted, it is not kept inviolate. Under the last mentioned act, justices of the peace decide to the amount of fifty dollars, without the intervention of a jury, from whose decision an appeal will lie. The evils and inconveniences which result to the party who wishes a jury trial, and for the attainment of his wishes must appeal, are many and great.

1st. A decision on the merits, even by a single justice, will have its influence at a subsequent trial, whether right or wrong.

2d. The condition of the bond to prosecute the appeal with effect, subjects the sureties absolutely to the payment of the condemnation money.

In case a suit is commenced in the common pleas, the bail to the action may surrender the principal and thereby exonerate themselves. The consequence of which difference is, that many suitors may procur[e] bail to the action, who cannot, on account of poverty, obtain sureties to prosecute his appeal.

This is evidently restraining and shackling the right of trial by jury—and if admitted to this extent, it may be carried to any extent, until that boasted right shall be wholly abrogated.

There is another point of light, in which this subject may be viewed, and to me, it is in itself conclusive.

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, &c."

It requires no great depth of political science to discern that there is a wide distinction between legislative power and judicial power. They are co-ordinate branches of our government, which are distinct and separate in their natures—independent and unblended in their operations.

A great and paramount object of the constitution is to prescribe to the legislative and judiciary powers, the precise sphere in which each is to act, that there may be no clashing interference or occurrency of authority.

"To declare what the law was and is, is a judicial power—but what it shall be, is legislative." Cranch, 2 vol. p. 277. Ogden vs. Blackledge.—

This principle in our constitution is founded in the wisest policy, as it raises an insuperable barrier against encroachments of one branch on the rights and powers of another.

The constitution has expressly declared "That no judge of any court of law or equity, secretary of state, attorney general, lister, clerk of any courts of record, sheriff or collector, member of either house of congress, or persons holding any office under the authority of the United States, or any lucrative office under the authority of this state (provided that no appointments in the militia, or justices of the peace, shall not be considered lucrative offices) shall be eligible as a candidate for, or have a seat in the general assembly."—See Ohio constitution, art. 1. sec. 26.

Why not permit judges of courts of law and equity, to have a seat in the general assembly? The reason is equally found as obvious, that those whose duty is to expound laws shall in no wise have a direct agency in the passing of laws. A consolidation of such power would lead inevitably to oppression. The grand bulwark of political security would be razed to the ground.

Let us compare this section of our constitution with the legislative act in question.

The language of the constitution is, that "no judge of any court of law or equity, shall have a seat in the legislature." The rational construction to be given that section, taking it together, is, that justices of the peace, are not judges of a court of law or equity, in the legal meaning of the expression, but simply are "triers of small causes," whose powers as such, are constitutionally incapable of extent.

Whether the respective branches of the general assembly, in deciding on the qualifications of returned members, have given a correct construction to this section of the constitution, by admitting justices of the peace to have seats in the legislature as members, is a question which they have a constitutional right to decide.

Conceding the point, that justices of the peace may hold seats in the general assembly, it follows, that the extent of their jurisdiction is impliedly limited by the constitution. If the jurisdiction of justices of the peace, may be extended from time to time, they must cease to act simply as "triers of small causes," but assume the highly important and responsible character of judges of the courts of law and equity. The moment that in fact they become such, they cannot have seats in the general assembly. If in view of the constitution they are judges of courts of law and equity, they can have no voice in the exercise of legislative discretion.

If justices of the peace may hold seats in the general assembly, and when thus cloathed with legislative authority, may be instrumental in enlarging to an indefinite extent, their judicial powers—there is no constitutional impediment to a judge of the supreme court or common pleas, from acting in the double capacity of law-giver and law-expositor.

To make our constitution speak such language—would be a libel on the character of our rights, and a reproach to its framers.

Whether a justice of the peace, is a judge of a court of law or equity, or a judge of law and equity is not on this occasion, necessary to be adjudicated—but certain it is, that to declare the act in question law, certain constitutional rights would be infringed.

The judgment of the common pleas court in this case was erroneous, and it is my opinion that it be reversed.