Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *McClain v. State*, Slip Opinion No. 2022-Ohio-4722.

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2022-Ohio-4722**

**MCCLAIN, APPELLANT, *v*. THE STATE OF OHIO, APPELLEE.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *McClain v. State*, Slip Opinion No. 2022-Ohio-4722.]**

*Criminal law—Wrongful imprisonment—Jury trial—Article I, Section 5 of the Ohio Constitution—There is no constitutional right to a jury trial in a wrongful-imprisonment action, because the action did not exist at common law.*

(No. 2021-0718—Submitted May 24, 2022—Decided December 29, 2022.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-200195, 2021-Ohio-1423.

_____

**STEWART, J.**

{¶ 1} In this discretionary appeal, we are asked to decide whether a defendant is entitled to a jury trial under Article I, Section 5 of the Ohio Constitution in a claim for wrongful imprisonment. We hold that appellant, Anthony McClain, has no constitutional right to a jury trial in his action to be declared a wrongfully imprisoned person under R.C. 2743.48, because this type of action did not exist at

common law. Accordingly, we affirm the judgment of the First District Court of Appeals.

**Facts and Procedural History**

{¶ 2} In 1995, McClain was indicted for murder in violation of R.C. 2903.02(A), with an accompanying firearm specification. He was tried by a jury, convicted of murder, and sentenced to a prison term of 15 years to life, to be served consecutively to a 3-year prison term for the firearm specification. The First District Court of Appeals affirmed McClain's conviction on appeal. *State v. McClain*, 1st Dist. Hamilton No. C-950859, 1996 WL 487931 (Aug. 28, 1996).

{¶ 3} In 2002, McClain filed in the trial court a motion for leave to file a motion for a new trial based on newly discovered evidence. After converting the motion for leave into a motion for a new trial, the trial court denied the motion. The First District reversed the trial court's judgment and remanded for a new trial. *State v. McClain*, 1st Dist. Hamilton No. C-040647 (Aug. 17, 2005). In 2006, McClain was retried by a jury and acquitted of all offenses.

{¶ 4} McClain filed an action against appellee, the state of Ohio, to be declared a "wrongly imprisoned individual" under R.C. 2743.48(A). He included a jury demand with his complaint.[1] McClain's demand was overruled. The question raised under R.C. 2743.48(A)(5)—whether McClain proved either that he did not commit murder or that no offense was committed by any person—was then tried to the bench.

{¶ 5} The trial court held that McClain failed to prove that he was actually innocent of the murder offense or that no offense was committed by any person; it therefore declined to declare McClain a wrongfully imprisoned person. McClain

---

1. McClain initially filed this action in the Franklin County Court of Common Pleas in 2008. He voluntarily dismissed his complaint in 2010 and refiled it in the same court in 2011. In 2016, the state filed a motion seeking a change of venue under R.C. 2743.48(B)(1). The court granted the motion and transferred the case to the Hamilton County Court of Common Pleas.

appealed to the First District, raising a single assignment of error: the trial court erred by refusing to grant McClain's right to a jury trial. The court of appeals, in a two-to-one decision, overruled McClain's assignment of error, holding that McClain did not have a constitutional right to a jury trial in the wrongful-imprisonment action. 2021-Ohio-1423, 171 N.E.3d 1228, ¶ 30.

{¶ 6} McClain filed a discretionary appeal in this court, raising a single proposition of law:

> The divided court in the First District erred when it held, in direct contravention of Article I, Section 5 of the Ohio Constitution, that Appellant was not entitled to a jury trial for his wrongful imprisonment claim.

*See* 164 Ohio St.3d 1460, 2021-Ohio-3594, 174 N.E.3d 810.

**Law and Analysis**

{¶ 7} Article I, Section 5 of the Ohio Constitution protects the right to a jury trial: "The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." In 1929, this court clarified that a right to a jury trial in civil cases is available only when, under the principles of the common law, the type of claim existed prior to the adoption of the Ohio Constitution. *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 396, 169 N.E. 301 (1929). Accordingly, the "assertion of a constitutional right to a jury necessarily entails inquiry into whether the common law recognized the type of claim [the plaintiff] presents." *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22.

{¶ 8} The wrongful-imprisonment statute, R.C. 2743.48, was enacted in 1986 to authorize wrongfully imprisoned persons to bring civil actions against the

state for money damages. *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 10. The statute establishes a two-step process: it first directs a plaintiff to obtain a determination whether he was wrongfully imprisoned by filing a civil action in the court of common pleas in the county in which the underlying criminal action was initiated, R.C. 2743.48(B)(1). That court has exclusive, original jurisdiction to hear and determine that action. R.C. 2305.02. Second, if the common pleas court determines that a person was wrongfully imprisoned, then the person may file a civil action against the state in the court of claims to recover a sum of money because of the wrongful imprisonment, R.C. 2743.48(B)(2). The court of claims has exclusive, original jurisdiction over the action to determine damages. R.C. 2743.48(D).

{¶ 9} To be declared a "wrongfully imprisoned individual" by the court of common pleas under the first step of the statute, an individual needs to satisfy the five elements of R.C. 2743.48(A):

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony, felony, or misdemeanor.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony, felony, or misdemeanor.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal and all of the following apply:

(a) No criminal proceeding is pending against the individual for any act associated with that conviction.

(b) The prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court, provided that this division does not limit or affect the seeking of any such appeal after the expiration of that one-year period as described in division (C)(3) of this section.

(c) The prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction, provided that this division does not limit or affect the bringing of any such proceeding after the expiration of that one-year period as described in division (C)(3) of this section.

(5) Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person.

**{¶ 10}** McClain argues that a wrongful-imprisonment claim has roots in the common law in the intentional tort of false imprisonment, which carried with it a right to a jury trial. McClain further asserts that this court recognized a common-law claim of false imprisonment against state officials long before R.C. 2743.48 was enacted, so he is therefore entitled to a jury trial.

**{¶ 11}** The state first responds that McClain's claim is statutory and has no common-law analogue. Second, the state argues that because McClain essentially seeks a declaratory judgment that he qualifies as a wrongfully imprisoned person under R.C. 2743.48(A), he seeks relief that was unavailable at common law. Finally, the state reasons that because McClain seeks to sue the state, an entity that could not be sued at common law without its express consent, the enactment of the wrongful-imprisonment statute created a new cause of action against the state without displacing former remedies. We agree with the state.

**{¶ 12}** Contrary to McClain's assertion, a wrongful-imprisonment claim is different than a claim at common law for the intentional tort of false imprisonment. The latter exists when "a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.' " *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 109, 573 N.E.2 633 (1991), quoting Harper & James, *The Law of Torts*, Section 3.7, at 226 (1956). While the common law sometimes allowed plaintiffs to bring false-imprisonment claims against *state officials*, *see, e.g., Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 119 N.E. 451 (1918), it did not permit suits against the state itself, *Raudabaugh v. State,* 96 Ohio St. 513, 518, 118 N.E. 102 (1917). However, R.C. 2743.02—the general waiver of immunity that was enacted in 1975 as part of the Court of Claims Act, *see Reynolds v. State*, *Div. of Parole & Community Servs*., 14 Ohio St.3d 68, 471 N.E.2d 776 (1984)—now allows persons who were imprisoned to bring false-imprisonment actions against the state. *Bennett* at 110. But the elements of a false-imprisonment claim differ from the elements of

a wrongful-imprisonment claim; they include (1) the expiration of a lawful term of confinement, (2) intentional confinement after the expiration, and (3) knowledge that the privilege initially justifying confinement no longer exists. *Brandon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 20AP-211, 2021-Ohio-418, ¶ 17, citing *Washington v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 19AP-830, 2020-Ohio-3385, ¶ 22. For example, an action against the state for false imprisonment may be based on the state's failure to comply with statutes controlling the release of a prisoner at the end of a prison term. *Bennett* at 110.

{¶ 13} In contrast, the underlying purpose of R.C. 2743.48 is to "provid[e] compensation to innocent persons who have been wrongfully convicted and incarcerated for a felony." *Bennett* at 110. And unlike an action for wrongful imprisonment, an action for false imprisonment does not turn on a plaintiff's innocence, *see Brinkman* at 174.

{¶ 14} A wrongfully imprisoned person could not bring an action against the state at common law, because the state enjoyed sovereign immunity. *See Walden v. State*, 47 Ohio St.3d 47, 53, 547 N.E.2d 962 (1989). And unlike the false-imprisonment tort, the wrongful-imprisonment statute requires that plaintiffs bring wrongful-imprisonment claims against the state for damages, not state officials. *See* R.C. 2743.48(B)(2).

{¶ 15} This court has recognized that the first step of the wrongful-imprisonment statute—being declared a wrongfully imprisoned individual in the court of common pleas—"has no parallel in the ancient dual system of law and equity." *Walden* at 53; *see also Renee v. Sanders*, 160 Ohio St. 279, 282, 116 N.E.2d 420 (1953) ("[Declaratory-judgment actions] did not exist prior to the adoption of the Ohio Constitution, and consequently it is manifest that there was no right to trial by jury in such actions prior to the adoption of the Constitution").

{¶ 16} Moreover, we have characterized a wrongful-imprisonment action under R.C. 2473.48 as a special proceeding. *State ex rel. O'Malley v. Russo*, 156

Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 21. We have noted that "[a] 'special proceeding' is one 'that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.' " *Id*., quoting R.C. 2505.02(A)(2). This court has held that Article I, Section 5 of the Ohio Constitution does not confer a right to a jury trial in a workers' compensation appeal permitted by R.C. 4123.512, although there is a right under the statute to a jury trial, because a workers' compensation claim is not sufficiently similar to any cause of action recognized at common law. *Arrington*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 27; *see also Hoops v. United Tel. Co. of Ohio*, 50 Ohio St.3d 97, 100-101, 553 N.E.2d 252 (1990) (there is no right to a jury trial under the Ohio Constitution in a claim brought under the age-discrimination statute, because the statute created a new civil right for which no common-law action had provided relief). Finally, this court has explicitly noted that the wrongful-imprisonment statute *supplements* the false-imprisonment tort to allow recovery in cases when recovery was not available before. *Bennett*, 60 Ohio St.3d at 111, 573 N.E.2 633. We have thus recognized that R.C. 2743.48 created a new right without a common-law analogue.

{¶ 17} Accordingly, we hold that Article 1, Section 5 of the Ohio Constitution does not preserve a right to a jury trial in a wrongful-imprisonment action against the state, because the action did not exist at common law. For these reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur.

DEWINE, J., concurs, with an opinion joined by KENNEDY and FISCHER, JJ.

DONNELLY, J., dissents, with an opinion joined by BRUNNER, J.

_____

**DeWine, J., concurring.**

**{¶ 18}** The majority opinion correctly concludes that the Ohio Constitution's jury trial right does not attach to a wrongful imprisonment action brought against the state. The Ohio Constitution codified a preexisting right to a jury trial and, as the majority explains, there was nothing equivalent to an R.C. 2743.48 wrongful imprisonment claim available at common law.

**{¶ 19}** I write separately to add a few points to the majority opinion's analysis. First, I explain that in addition to failing because of the lack of a historical analogue, the claim that there is a jury trial right here also fails because it is inconsistent with the state's waiver of sovereign immunity. Second, I supplement the majority opinion's analysis of the lack of historical analogues to the wrongful imprisonment action by explaining that prior to the enactment of R.C. 2743.48, the remedy for wrongful imprisonment came not through a lawsuit but by the passage of special legislation.

*The state's waiver of sovereign immunity is limited and does not include a right to a jury trial*

**{¶ 20}** At common law, the state, as sovereign, could not be sued without its consent. *Raudabaugh v. State*, 96 Ohio St. 513, 515, 118 N.E. 102 (1917). Indeed, "[t]he immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries." *Nevada v. Hall*, 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), *overruled on other grounds by Franchise Tax Bd. of California v. Hyatt*, ___ U.S. ___, 139 S.Ct. 1485, 203 L.Ed.2d 768 (2019). Thus, "[o]nly the sovereign's own consent could qualify the absolute character of that immunity." *Id.*

**{¶ 21}** The Ohio Constitution is in line with this historical understanding of sovereignty. It provides that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." Ohio Constitution, Article I, Section 16. Adopted in 1912, Section 16 constitutionalizes the common-law

precept that the state is absolutely immune from suits brought by individuals, unless it consents to be sued—that is, unless the right to sue the state "is provided by law." Before Section 16, the state was "not capable of being made a party defendant." *Miers v. Zanesville & Maysville Turnpike Co.*, 11 Ohio 273, 274 (1842).

{¶ 22} The state waives sovereign immunity "by express power conferred by statute, and in the manner so expressed." *See Hunter v. Mercer Cty. Commrs.*, 10 Ohio St. 515, 520 (1860). Thus, when a state chooses to waive its immunity, it "may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." *Beers v. Arkansas*, 61 U.S. 527, 15 L.Ed. 991 (1857); *see also Raudabaugh* at 515.

{¶ 23} One example of such a waiver comes from the Court of Claims Act, R.C. 2743.01 et seq. Under the act, "[t]he state hereby waives its immunity from liability, * * * and consents to be sued, and have its liability determined, in the court of claims" for certain claims, R.C. 2743.02(A)(1). But the waiver is partial: it is expressly "subject to the limitations set forth in this chapter," *id*.; *see Scot Lad Foods, Inc. v. Secy. of State*, 66 Ohio St.2d 1, 11-12, 418 N.E.2d 1368 (1981). One of those limitations is that "civil action[s] against the state shall be heard and determined by a single judge," R.C. 2743.03(C)(1), not by a jury, R.C. 2743.11. Accordingly, the constitutional right to a jury trial never attaches in a proceeding commenced against the state in the court of claims. *See* R.C. 2743.11; *accord McElrath v. United States*, 102 U.S. 426, 440, 26 L.Ed. 189 (1880) (no jury trial right in federal court of claims); *United States v. Sherwood*, 312 U.S. 584, 587, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (same).

{¶ 24} The General Assembly waived sovereign immunity again in 1986 when it " 'authorize[d] civil actions against the state, for specified monetary amounts, in the Court of Claims by certain wrongfully imprisoned individuals.' " *Walden v. State*, 47 Ohio St.3d 47, 49, 547 N.E.2d 962 (1989), quoting Sub.H.B. No. 609, 141 Ohio Laws, Part III, 5351. The wrongful imprisonment statutes

created a "two-step process." *Id.* First, the plaintiff must "be declared a wrongfully imprisoned individual in the court of common pleas." R.C. 2743.48(B)(1). If the court declares the plaintiff wrongfully imprisoned at step one, then the plaintiff at step two "may file a civil action against the state, in the court of claims, to recover a sum of money." R.C. 2743.48(D).

{¶ 25} This case pertains to step one. There, the court of common pleas "has exclusive, original jurisdiction to hear and determine" a wrongful-imprisonment action. R.C. 2305.02. The state's waiver of immunity does not go so far as to give the plaintiff a jury trial right. Rather, at step one, it is for the court of common pleas, not a jury, to "determine[] that a person is a wrongfully imprisoned individual." R.C. 2743.48(B)(2).

{¶ 26} McClain's contention that he is entitled to a jury trial contradicts the "manner" that the General Assembly has "provided by law" for wrongful imprisonment actions to proceed. Ohio Constitution, Article I, Section 16. Thus, even if McClain proved that at common law one could sue an individual defendant for wrongful imprisonment type claims, it would transgress the Constitution to provide a jury trial right *against the state* when the General Assembly has not waived sovereign immunity. *Raudabaugh*, 96 Ohio St. at 515, 118 N.E. 102.

### R.C. 2743.48 creates a special proceeding with no common-law analogue

{¶ 27} In addition to failing because it is inconsistent with the state's limited waiver of sovereign immunity, McClain's claim fails because there was no judicial action comparable to wrongful imprisonment available at common law.

{¶ 28} The Ohio Constitution speaks of "[t]he right of trial by jury." Article I, Section 5. By referring to "the right," it presupposes "a right then known and established" at "the time of the framing" of the Ohio Constitution, *Rutherford v. M'Faddon* (1807), Pollack, *Ohio Unreported Judicial Decisions Prior to 1823*, Part II, 71, 78 (1952), available at 2001-Ohio-56; *see also District of Columbia v. Heller*, 554 U.S. 570, 592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (discussing *the*

11

preexisting right to keep and bear arms). "That guaranty only preserves the right of trial by jury in cases where under the principles of the common law it existed previously to the adoption of the Constitution." *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 396, 169 N.E. 301 (1929).

{¶ 29} The majority opinion properly characterizes the type of suit that McClain has commenced as a "special proceeding"—one that "is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2); *see* majority opinion, ¶ 16, citing *State ex rel. O'Malley v. Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 21. As the majority opinion explains, there was no comparable action available prior to R.C. 2743.48's enactment. Indeed, the state was previously immune from suits for wrongful imprisonment (absent waiver in a particular case).

{¶ 30} The 1986 codification of the wrongful-imprisonment action "replac[ed] the former practice of compensating wrongfully imprisoned persons by *ad hoc* moral claims legislation." *Walden*, 47 Ohio St.3d at 49, 547 N.E.2d 962. That is, prior to the advent of R.C. 2743.48, the legislature, not the courts, fashioned the remedy for wrongful imprisonment. This court summarized, and sanctioned, the practice nearly a century ago:

> Where the state inflicts an injury upon an individual, for the reparation of which no law exists, and the facts incident thereto are not in dispute, and the Legislature finds that a moral obligation rests upon the state to compensate the injured party for the damages sustained, the Legislature has full authority to provide, by special enactment, for the appropriation of public money to meet such moral obligation * * *.

*Spitzig v. State*, 119 Ohio St. 117, 162 N.E. 394, syllabus (1928).

{¶ 31} Special bills could grant individualized permission to bring a claim against the state in a court of law or order direct compensation of a sum certain for torts committed by the state. Thomas W. Kahle & Stephen R. Schmidt, *Claims against the State of Ohio: Sovereign Immunity, the Sundry Claims Board and the Proposed Court of Claims Act*, 35 Ohio St.L.J. 462, 469 (1974). As an example of the former, the General Assembly passed a bill that read: "Morris Seely * * * is hereby authorized and empowered to institute, commence and prosecute an amicable suit * * * in the court of common pleas * * * against the state of Ohio for the recovery of any and all such damages which he may have sustained by reason of the nonperformance upon the part of the state of any contract entered into * * * ." An Act for the relief of Morris Seely, 37 Ohio Laws 220 (1839); *see also Seely v. State*, 11 Ohio 501 (1842). Such enactments functioned as individualized waivers of immunity from suits commenced against the state. Other times, the General Assembly used its appropriation power directly, *see* Ohio Constitution, Article II, Section 22, such as when it authorized the state treasurer "to pay Caleb Atwater the sum of [$534.96] out of any moneys in the treasury not otherwise appropriated," An Act for the relief of Caleb Atwater, 36 Ohio Laws 305 (1838).

{¶ 32} Perhaps seeing a need to streamline this ad hoc legislative practice, the General Assembly in 1917 created the Sundry Claims Board. H.B. 32, 107 Ohio Law 532. The board was "empowered to receive original papers representing claims against the state of Ohio for the payment of which no monies have been appropriated," to "carefully investigate[]" such claims, and to tender its "approval or disapproval" to "the chairman of the finance committee of the house of representatives of the next general assembly." *Id.* In effect, approval of the Sundry Claims Board amounted to its recommendation that the legislature appropriate funds to remedy wrongs committed by the state.

{¶ 33} On rare occasions, victims of wrongful imprisonment received compensation through appropriations bills passed at the behest of the Sundry

Claims Board. In one 1959 "sundry appropriations" bill, the state awarded Joseph Cole Jr. $5,000 "for damages sustained as the result of his wrongful arrest and imprisonment," Roy Donley $2,400 "for wrongful incarceration" after someone else confessed to the crime, and Aaron Morgan $5,000 "for false incarceration" after a writ of habeas corpus issued for his release. Am.H.B. No. 1125, 128 Ohio Laws Supp. 127, 141. And in a 1971 "sundry appropriation," the state awarded Charles Bailey $30,000 after he served approximately 10 years of "unlawful incarceration." Am.S.B. No. 562, 134 Ohio Laws 520, 525.

**{¶ 34}** But perceived defects in the sundry-claims process spelled the end of the board and gave rise to the Court of Claims in its stead. Ohio Court of Claims, *History of the Court*, https://ohiocourtofclaims.gov/about-us/history-of-the-court-2/ (accessed Dec. 26, 2022) [https://perma.cc/Q63H-ZTQL]**.** Although the Court of Claims Act waived the state's immunity from lawsuits in that court, "the Act d[id] not create new rights or causes of action." *Reese v. Ohio State Univ. Hosps.*, 6 Ohio St.3d 162, 163, 451 N.E.2d 1196 (1983). With respect to wrongful imprisonment, the General Assembly had yet to create a cause of action in the court of claims (thus retaining immunity from those suits). *See Tymcio v. State*, 52 Ohio App.2d 298, 369 N.E.2d 1063 (10th Dist.1977). So prior to R.C. 2743.48, only the political process of individualized appropriations could make wrongful-imprisonment victims whole. *See Johns v. State*, 67 Ohio St.2d 325, 423 N.E.2d 863 (1981), paragraph one of the syllabus ("A defendant has no common-law claim against the state for damages after he has obtained his release" from prison "for violation of his constitutional rights").

**{¶ 35}** In the case of Frank Johns, after a writ of habeas corpus was issued ordering his release from prison, *see Johns v. Perini*, 462 F.2d 1308 (6th Cir.1972) (ineffective assistance of counsel), he persuaded the General Assembly to pass a special bill on his behalf, Am.Sub.S.B. No. 221, Section 41, 137 Ohio Laws Supp. 172, 434 (1977). That legislation "authorized [Johns] to file a claim for damages

14

in the Court of Claims for unlawful incarceration," among other things. *Id.* The bill tasked the court of claims with determining whether "Johns ha[d] been unlawfully incarcerated by the State of Ohio," and if so, to compensate him. *Id.* Although litigation tactics ultimately cost Johns any chance of compensation, *Johns* at 329, the legislation granting him special authority shows that the first step to earning relief from the state for wrongful imprisonment was obtaining authorization to sue by special bill—itself a limited waiver of sovereign immunity.

{¶ 36} Similarly, when "[Leonard] O'Neil filed suit in the Court of Claims seeking to recover damages for his unlawful incarceration," the court turned him away. *O'Neil v. State*, 13 Ohio App.3d 320, 321, 469 N.E.2d 1010 (10th Dist.1984). But the General Assembly subsequently passed a bill authorizing "O'Neil to 'file a claim in the Court of Claims against the State of Ohio for * * * damages that allegedly resulted from an erroneous imprisonment.' " *Id.*, quoting Am.Sub.S.B. No. 123, Section 2, 139 Ohio Laws, Part I, 1896, 1897 (1981). Equipped with admission into court, O'Neil returned to the court of claims and received compensation.

{¶ 37} This history makes clear that McClain's wrongful imprisonment claim fails the test for the attachment of the constitutional right to a trial by jury. The right to seek compensation for wrongful imprisonment "is specially created by" R.C. 2743.48 (or a few special bills that preceded it), and "prior to 1853 was not denoted as an action at law or a suit in equity," R.C. 2505.02(A)(2); *accord Spitzig*, 119 Ohio St. 117, 162 N.E. 394, at syllabus (special bills permitted only if "no law exists"). Indeed, nearly a century ago, we characterized as "well recognized" the principle that "many special proceedings for the enforcement of a moral duty, where the payment of money is the ultimate relief granted, do[] not entitle the parties to a jury trial." *Belding*, 121 Ohio St. at 397, 169 N.E. 301.

{¶ 38} Courts have long played a role in *freeing* wrongfully imprisoned individuals through the writ of habeas corpus. *In re Collier*, 6 Ohio St. 55, 59

(1856). But prior to R.C. 2743.48's enactment, *compensating* victims of wrongful imprisonment had been a legislative prerogative. And courts were involved in that process only to the extent that a special bill prescribed their involvement. But never has a jury assessed the state's liability and damages.

{¶ 39} McClain analogizes his claim to the common-law tort of *false* imprisonment, for which a jury *did* traditionally play a role in assessing liability and damages. *See Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 24-25. But "an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court." *Diehl v. Friester*, 37 Ohio St. 473, 475 (1882). That defeats the analogy because a "wrongfully imprisoned individual" must have been "sentenced to" a "term of imprisonment" after being "found guilty." R.C. 2743.48(A)(3). False imprisonment and wrongful imprisonment are mutually exclusive, not analogous.

### *Conclusion*

{¶ 40} McClain is attempting to require the state to defend itself before a jury in a civil case. Trial by jury, however, is not the "manner" in which the state has agreed by law to be sued for wrongful imprisonment. And the constitutional right to a jury trial, Ohio Constitution, Article I, Section 5, does not attach to wrongful-imprisonment actions in any event because prior to R.C. 2743.48, the General Assembly, not the judiciary, remedied harms suffered from wrongful imprisonment. For these reasons, and the ones set forth in the majority opinion, the judgment of the First District Court of Appeals is properly affirmed.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

––––––––––––––––––

**DONNELLY, J., dissenting.**

{¶ 41} I respectfully dissent for the reasons stated in Judge Bergeron's well-researched and well-reasoned dissenting opinion in the First District Court of

Appeals. 2021-Ohio-1423, 171 N.E.3d 1228, ¶ 32-70 (Bergeron, J., dissenting). I would hold that a constitutional right to a jury trial exists in an action under R.C. 2743.48 to be declared a wrongfully imprisoned person. I would therefore reverse the judgment of the court of appeals and remand the cause to the trial court for a jury trial.

BRUNNER, J., concurs in the foregoing opinion.

_____

Dave Yost, Attorney General, and Benjamin M. Flowers, Solicitor General, for appellee.

Koenig & Owen, L.L.C., Charles A. Koenig, and James D. Owen, for appellant.

_____