[Cite as *McClain v. State*, 2021-Ohio-1423.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANTHONY MCCLAIN, | : | APPEAL NO. C-200195 |
| | | TRIAL NO. A-1604385 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| STATE OF OHIO, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 23, 2021

*Koenig & Owen, LLC*, *James D. Owen* and *Charles A. Koenig*, for Plaintiff-Appellant,

*Dave Yost*, Ohio Attorney General, and *Margaret Moore*, Assistant Attorney General, for Defendant-Appellee.

**MYERS, Presiding Judge.**

{¶1} Anthony McClain appeals the judgment of the Hamilton County Common Pleas Court, following a bench trial, in favor of the state of Ohio on his statutory claim for a determination that he is a wrongfully imprisoned individual. The basis for McClain's appeal is his assertion that he was entitled to a trial by jury. Because McClain had no constitutional or statutory right to a jury trial, we hold that the trial court properly overruled his jury demand and we affirm the court's judgment.

## I. Procedural History

{¶2} In 1995, McClain was indicted for murder and an accompanying firearm specification. After a jury trial, he was convicted of the offenses and was sentenced to a prison term of 15 years to life for the murder offense, to be served consecutively to a three-year prison term for the firearm specification. This court affirmed McClain's conviction on appeal, and the Supreme Court of Ohio declined to review the matter. *State v. McClain*, 1st Dist. Hamilton No. C-950859, 1996 WL 487931 (Aug. 28, 1996), *jurisdictional motion overruled*, 77 Ohio St.3d 1515, 674 N.E.2d 370 (1997).

{¶3} In 2002, McClain filed a motion for leave to file a motion for a new trial on the basis of newly discovered evidence. In 2004, the trial court converted the motion for leave into a motion for a new trial and denied the motion. This court reversed the trial court's judgment and remanded for a new trial. *State v. McClain*, 1st Dist. Hamilton No. C-040647 (Aug. 17, 2005).[1] In 2006, at a retrial, a jury acquitted McClain of the offenses.

---

[1] The Supreme Court of Ohio denied the state's motion for leave to appeal. *State v. McClain*, 107 Ohio St.3d 1699, 2005-Ohio-6763, 840 N.E.2d 204.

{¶4} McClain filed an action against the state of Ohio to be declared a "wrongfully imprisoned individual," as defined in R.C. 2743.48(A),[2] and included a jury demand in his complaint. The trial court overruled McClain's request for a jury trial, and the matter proceeded to a bench trial on the issue of whether McClain satisfied the condition in R.C. 2743.48(A)(5), by showing "either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person." The court determined that McClain failed to prove that he was actually innocent of the murder offense and declined to declare McClain a wrongfully imprisoned individual. This appeal followed.

## II. Right to a Jury Trial

{¶5} In a single assignment of error, McClain argues that the trial court erred by denying his constitutional and statutory rights to a jury trial in his wrongful-imprisonment action against the state.

{¶6} Article I, Section 5 of the Ohio Constitution states that "[t]he right of trial by jury shall be inviolate[.]" However, the right to a jury trial is not absolute. *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22. The Constitution does not guarantee all civil litigants a trial by jury. *Id.* There is no right to a jury trial unless that right is extended by statute or existed at common law prior to the adoption of the Ohio Constitution. *Kneisley v. Lattimer-Stevens Co.*, 40 Ohio St.3d 354, 356, 533 N.E.2d 743 (1988).

---

[2] McClain initially filed the action in 2008 in Franklin County, Ohio. He voluntarily dismissed his complaint in 2010, and refiled it in 2011. In 2016, the venue of the case was transferred to Hamilton County, Ohio.

### III. The Wrongful-Imprisonment Statute

{¶7}   The wrongful-imprisonment statute, R.C. 2743.48, allows a person who satisfies the definition of a wrongfully imprisoned individual to bring an action against the state in the court of claims to recover damages because of the person's wrongful imprisonment.  R.C. 2743.48(D); *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 10.  But first, the person must file a civil action to be declared a "wrongfully imprisoned individual," as defined in R.C. 2743.48(A), in the court of common pleas in the county where the underlying criminal action was initiated.  *See* R.C. 2743.48(B)(1).  That court has exclusive, original jurisdiction to hear and determine the action.  R.C. 2305.02.  "Only courts of common pleas have jurisdiction to determine whether a person has satisfied the five requirements of R.C. 2743.48(A)."  *Griffith v. Cleveland*, 128 Ohio St.3d 35, 2010-Ohio-4905, 941 N.E.2d 1157, paragraph one of the syllabus.

{¶8}   R.C. 2743.48(A) defines a "wrongfully imprisoned individual" as an individual who satisfies each of the five following conditions:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony, felony, or misdemeanor.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony, felony, or misdemeanor.

4

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal and all of the following apply:

(a) No criminal proceeding is pending against the individual for any act associated with that conviction.

(b) The prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court, provided that this division does not limit or affect the seeking of any such appeal after the expiration of that one-year period as described in division (C)(3) of this section.

(c) The prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction, provided that this division does not limit or affect the bringing of any such proceeding after the expiration of that one-year period as described in division (C)(3) of this section.

(5) Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that

resulted in the individual's release, *or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person.* In addition to any other application of the provisions of this division regarding an error in procedure that occurred prior to, during, or after sentencing, as those provisions exist on and after the effective date of this amendment, if an individual had a claim dismissed, has a claim pending, or did not file a claim because the state of the law in effect prior to the effective date of this amendment barred the claim or made the claim appear to be futile, those provisions apply with respect to the individual and the claim and, on or after that effective date, the individual may file a claim and obtain the benefit of those provisions.

(Emphasis added.) R.C. 2743.48(A).

{¶9} If the common pleas court determines that a person is a wrongfully imprisoned individual, then the person may file a civil action against the state in the court of claims to recover a sum of money because of the wrongful imprisonment. R.C. 2743.48(D). The court of claims has exclusive, original jurisdiction over such a civil action. *Id.* Upon presentation of the requisite proof to the court of claims, a wrongfully imprisoned individual is entitled to receive a sum of money as set forth in the statute. R.C. 2743.48(E)(2).

{¶10} "Because the legislature created the right to bring a wrongful-imprisonment action under R.C. 2743.48 in 1986, * * *, [such an action is] a special

proceeding under R.C. 2505.02(A)(2)." *State ex rel. O'Malley v. Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 21; R.C. 2505.02(A)(2) (defining "special proceeding" as one "that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity").

## IV. No Statutory Right to a Jury Trial

{**¶11**} The Supreme Court has explained, "when the General Assembly intends that a case may be tried by a jury, it has manifested its intent with appropriate language." *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 46 (holding that the requirement in R.C. 2701.10 that the "judge" to whom a case is referred "try all of the issues in the action or proceeding" denies the judge the authority to conduct a jury trial); *see Kneisley*, 40 Ohio St.3d at 357, 533 N.E.2d 743 ("Absent ambiguity, statutory language is not to be enlarged or construed in any way other than that which its words demand.").

{**¶12**} The language of R.C. 2743.48 indicates that the General Assembly intended that a judge, and not a jury, should determine in the first instance whether a person was wrongfully imprisoned. R.C. 2743.48(B)(2) specifically provides that "the court of common pleas" is to make the determination that a person is a wrongfully imprisoned individual. To be so declared in this case, McClain was required to prove that he satisfied each of the five conditions in R.C. 2743.48(A), including the condition in (A)(5) that:

> it was *determined by the court of common pleas* in the county where
> the underlying criminal action was initiated either that the offense of
> which the individual was found guilty, including all lesser-included

7

offenses, was not committed by the individual or that no offense was
committed by any person.

(Emphasis added.) The unambiguous statutory language indicates that the General Assembly intended that the common pleas court, not a jury, make the determination of innocence under R.C. 2743.48(A)(5). *See Collier-Hammond v. State*, 2020-Ohio-2716, 154 N.E.3d 364, ¶ 22 (8th Dist.) (R.C. 2743.48 does not expressly provide a statutory scheme for a jury trial). Consequently, we hold that R.C. 2743.48 does not provide the right to a jury trial for the initial determination of innocence by the common pleas court in an action filed under R.C. 2743.48(B)(1).

{¶13} McClain argues that a wrongful-imprisonment action is one "for the recovery of money only" so that R.C. 2311.04 provides him with a statutory right to a jury trial. R.C. 2311.04 provides:

Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in *actions for the recovery of money only*, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.

All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.

(Emphasis added.)

{¶14} However, a wrongful-imprisonment action is not an "action for the recovery of money only." There is no recovery of money in the first step of the two-step procedure set forth in R.C. 2743.48. The first step is simply an "action to be declared a wrongfully imprisoned individual." *See* R.C. 2743.48(B)(1). And, even

8

though the second step in the court of claims is "to recover a sum of money" under R.C. 2743.48(D), R.C. 2311.04 does not provide a jury trial for a "special proceeding" that did not exist at common law. *See Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 419-420, 513 N.E.2d 776 (1987).

{¶15} In *Armstrong,* the Supreme Court of Ohio rejected an argument by a dissenting shareholder that R.C. 2311.04 provided the right to a jury trial in a special proceeding under R.C. 1701.85 for the valuation of a corporation's shares. *Id.* The court held:

> The scope of [R.C. 2311.04] is certainly no greater than the constitutional provision [in Article I, Section 5 of the Ohio Constitution].
>
> In contrast to appellant's claim, R.C. 1701.85(B) provides that: "*The court* thereupon shall make a finding as to the fair cash value of a share, and shall render judgment against the corporation for the payment of it * * *." (Emphasis added.) Quite clearly, this provision dispenses with the requirement of a jury trial and requires that the finding be made by the trial court[.]

(Emphasis sic.) *Armstrong* at 419.

{¶16} The court explained that the General Assembly was entitled to establish "special proceedings," which were not actions for money requiring jury participation. *Id.* at 419-420. The court quoted its 1929 decision in *Belding v. State ex rel. Heifner*, wherein it held that a statute providing for a trial court's determination of an amount payable as child support did not violate the Ohio Constitution:

It was not, however, the intention of the framers of that clause * * * to guarantee the right of trial by jury in all controversies. That guaranty only preserves the right of trial by jury in cases where under the principles of the common law it existed previously to the adoption of the Constitution. The right of trial by jury has uniformly been recognized and enforced in this state in actions for money, where the claim is an ordinary debt, but it is equally well recognized that many special proceedings for the enforcement of a moral duty, where the payment of money is the ultimate relief granted, does [sic] not entitle the parties to a jury trial.

*Id.* at 420, quoting *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 396-397, 169 N.E. 301 (1929).

{¶17} In *Kneisley v. Lattimer-Stevens Co.*, the Supreme Court followed *Armstrong* and refused to interpret the term "court" in former R.C. 4121.80(D) to permit a jury trial in an employee's intentional tort action under that statute, which provided:

[I]n any action brought pursuant to this section, the court is limited to a determination as to whether or not the employer is liable for damages on the basis that the employer committed an intentional tort. If the court determines that the employee or his estate is entitled to an award under this section and that determination has become final, the industrial commission shall, after hearing, determine what amount of damages should be awarded.

*Kneisley*, 40 Ohio St.3d at 355, 533 N.E.2d 743. The court noted that the General Assembly recognized the distinction between the terms "jury" and "court." *Id.* at 357. The court concluded that, "in assigning liability determinations under R.C. 4121.80(D) to the 'court' instead of to the court *or* jury, the General Assembly intended a bench trial only." (Emphasis sic.) *Id.*; *see Hoops v. United Tel. Co. of Ohio*, 50 Ohio St.3d 97, 101, 553 N.E.2d 252 (1990) (holding that no jury trial is available for an age-discrimination action where R.C. 4101.17 stated that "the court" would make findings and order an appropriate remedy).

{**¶18**} Because a wrongful-imprisonment action under R.C. 2743.48 is a "special proceeding" that did not exist at common law, *Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, at ¶ 21, we hold that R.C. 2311.04 does not provide a right to a jury trial for such an action. *See Armstrong*, 32 Ohio St.3d at 419-420, 513 N.E.2d 776.

{**¶19**} McClain also asserts that another statute, R.C. 2721.10, provides him a right to a jury trial. He argues that a wrongful-imprisonment action under R.C. 2743.48 is a declaratory-judgment action and that he is entitled to a jury trial pursuant to R.C. 2721.10, which provides:

> When an action or proceeding in which declaratory relief is sought *under this chapter* involves the determination of an issue of fact, that issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending.

(Emphasis added.)

{¶20} That statute makes clear, however, that its application is limited to actions brought under R.C. Chapter 2721, the Declaratory Judgment Act, so it has no application to a wrongful-imprisonment action under R.C. 2743.48.

{¶21} Consequently, we reject McClain's argument that he has a statutory right to a jury trial for a wrongful-imprisonment action.

### V. No Constitutional Right to a Jury Trial

{¶22} At common law, no remedy existed for a wrongfully imprisoned person to bring an action against the state. *Walden v. State*, 47 Ohio St.3d 47, 53, 547 N.E.2d 962 (1989); *Wright v. State*, 69 Ohio App.3d 775, 779, 591 N.E.2d 1279 (10th Dist.1990). Before the enactment of R.C. 2743.48 (the wrongful-imprisonment statute) and R.C. 2305.02 (the statute setting forth the exclusive, original jurisdiction of the common pleas court to determine an action commenced under R.C. 2743.48(B)), the state was immune from such lawsuits. *Walden* at 53. "The action created by R.C. 2305.02 and 2743.48 is a waiver of the state's common-law sovereign immunity, and *has no parallel in the ancient dual system of law and equity.*" (Emphasis added.) *Id.*; *see Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, at ¶ 21 (a wrongful-imprisonment action is a special proceeding because it was one that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity). Therefore, "Section 5, Article I of the Ohio Constitution does not preserve a right to a jury trial for [a wrongful-imprisonment] action filed against the State." *Collier-Hammond*, 2020-Ohio-2716, 154 N.E.3d 364, at ¶ 22.

{¶23} McClain argues, however, that an action for wrongful imprisonment is analogous to a common law intentional tort claim for false imprisonment, for which

the right to a trial by jury existed at common law. Claims for injuries arising from intentional torts were recognized at common law and typically retain a right to trial by jury. *Arrington*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 24.

{¶24} Under Ohio law, however, false imprisonment and wrongful imprisonment are distinct causes of action. *Brandon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 20AP-211, 2021-Ohio-418 ¶ 16. False imprisonment exists where "a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.' " *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 109, 573 N.E.2d 633 (1991), quoting *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71, 362 N.E.2d 646 (1977). An action for false imprisonment against the state may be based on the state's failure to comply with statutes mandating the release of its prisoners. *Id.* at 110. The elements of a false-imprisonment claim by a former prisoner against the state are (1) the expiration of a lawful term of confinement; (2) intentional confinement after the expiration; and (3) knowledge that the privilege initially justifying the confinement no longer exists. *Brandon* at ¶ 17, citing *Washington v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 19AP-830, 2020-Ohio-3385, ¶ 22. These actions may now be brought against the state by virtue of R.C. 2743.02 (the general waiver of immunity).

{¶25} Conversely, an action for wrongful imprisonment under R.C. 2743.48 is an action against the state to "provid[e] compensation to innocent persons who have been wrongfully convicted and incarcerated for a felony." *Bennett* at 110. Although R.C. 2743.48 was initially drafted to provide recovery based on a demonstration of actual innocence, the statutory language has been amended to include individuals released as a result of *Brady* violations. *Brandon* at ¶ 16, citing

13

*Lemons v. State*, 8th Dist. Cuyahoga No. 109188, 2020-Ohio-5619, ¶ 17. This action did not exist at common law. *See Walden*, 47 Ohio St.3d at 53, 547 N.E.2d 962.

{**¶26**} In addition, at common law, claims for false imprisonment could not be maintained against the state because of sovereign immunity. *Bennett* at 110-111. Until the enactment of R.C. 2743.02(A)(1), the state could not be held liable for the false imprisonment of its prisoners. *See id.* R.C. 2743.02 was enacted in 1975 as part of the Court of Claims Act. *Reynolds v. State*, 14 Ohio St.3d 68, 69-70, 471 N.E.2d 776 (1984). "With the passage of the Act, individuals can sue the state and have liability determined with the same rules of law applicable to suits between private parties." *Id.* at 70. Under R.C. 2743.02(A)(1), the state may be held liable for the false imprisonment of its prisoners because "[t]he tort of false imprisonment is a rule of law that is generally applicable to private parties." *Bennett*, 60 Ohio St.3d 107 at 110, 573 N.E.2d 633.

{**¶27**} Unlike an action for false imprisonment, an action for wrongful imprisonment is not one generally applicable to private parties and did not exist at common law. The state, and only the state, can wrongfully convict someone. Therefore, "even after the waiver of sovereign immunity in R.C. 2743.02" in 1975 the state "remained generally immune from lawsuits by persons who were wrongfully convicted and incarcerated" until the enactment of R.C. 2743.48 in 1986. *Id.*

{**¶28**} Although at common law, a claim for false imprisonment existed between private parties, no such claim could be brought against the state. In 1975, by virtue of R.C. 2743.02, an action for false imprisonment could now, theoretically, be brought against the state. However, there was never an action at common law for someone who was wrongfully imprisoned, i.e., wrongfully convicted. It was not until

1986, with the enactment of R.C. 2743.48, that a wrongful-imprisonment action could be brought against the state. If, as McClain argues, R.C. 2743.48 is an extension of the common law tort of false imprisonment, the legislature would not have needed to enact R.C. 2743.48, the wrongful-imprisonment statute, 11 years after it waived its sovereign immunity by the enactment of R.C. 2743.02.

{¶29} As the Supreme Court explained in *Bennett*, "R.C. 2743.48 does not replace the false imprisonment tort but, rather, supplements it to allow a recovery in some cases when recovery was not available before." *Id.* at 111. In other words, R.C. 2743.48 did not extend the tort of false imprisonment that existed at common law, it created a distinct cause of action against the state for prisoners who were wrongfully convicted. *Collier-Hammond*, 2020-Ohio-2716, 154 N.E.3d 364, at ¶ 22 ("The right to a jury trial in claims of wrongful imprisonment did not exist in common law, because R.C. 2743.48 did not exist until 1986.").

{¶30} Therefore, Article I, Section 5 of the Ohio Constitution does not preserve a right to a jury trial in a wrongful-imprisonment action because the action did not exist at common law. *See id.* Consequently, McClain did not have a constitutional right to a jury in the action before the trial court.

## VI. Conclusion

{¶31} Because no statutory or constitutional right to a jury trial exists in an action to be declared a wrongfully imprisoned individual pursuant to R.C. 2743.48, we hold that the trial court did not err in overruling McClain's request for a jury trial. We overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**WINKLER, J.,** concurs.
**BERGERON, J.,** dissents.

15

**BERGERON, J.,** dissenting.

**{¶32}** No right is so venerated and yet simultaneously undermined as the constitutional right to a jury trial. The opinions on this subject invoke majestic prose and ringing oratory to describe the right—immediately before they chip away at its foundation. If we keep going down this path, we risk relegating a fundamental constitutional guarantee into a historical footnote. To understand this paradox, and how we got here, I start with a bit of history.

I.

**{¶33}** The jury trial once reigned as one of the most "esteem[ed]" and "universally secured" rights of American democracy. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 340-341, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting), quoting L. Levy, *Legacy of Suppression: Freedom of Speech and Press in Early American History* 281 (1960). So essential was the jury trial considered to the fair administration of justice that deprivation of the colonists' jury trial rights "was listed among the specific offensive English acts denounced in the Declaration of Independence." *Id.* at 340. The Seventh Amendment to the United States Constitution, guaranteeing a jury trial right in civil cases, emerged as "chief among" the demands of many states during our ratification debates. *Id.* at 342. Thomas Jefferson aptly described the jury trial as "the only anchor, as yet imagined by man, by which a government can be held to the principles of its constitution." Letter from Thomas Jefferson to Thomas Paine (July 11, 1789), reprinted in 15 The Papers of Thomas Jefferson 269 (Boyd Ed.1958). *See Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 31. "Our forefathers were willing to sacrifice their very lives to preserve for the people of the United States of America the

inestimable right to trial by jury." *Butler v. Jordan*, 92 Ohio St.3d 354, 371, 750 N.E.2d 554 (2001). It is no surprise, in light of this history, that some version of the civil right to trial by jury found its way into the constitutions of nearly every state.

{¶34} What is surprising—or surely would be to our founders—is the recent, steady decline of this once-revered institution. One rarely discusses the jury trial nowadays without a caveat acknowledging its scarcity. We speak of the "vanishing jury trial," the "disappearing jury trial," or the "missing American jury." *See* Shari Seidman Diamond and Jessica M. Salerno*, Reasons for the Disappearing Jury Trial: Perspectives from Attorneys and Judges*, 81 La.L.Rev. 119-120 (2020); Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Court*s, 1 J.Empirical Leg.Stud. 459 (2004); Suja A. Thomas, *The Missing American Jury: Restoring the Fundamental Constitutional Role of the Criminal, Civil, and Grand Juries* (2016). In federal courts, despite a fourfold increase in the number of civil case filings, the percentage of civil claims that reached a jury trial plummeted from 5.5 percent in 1962 to .8 percent in 2013. Diamond and Salerno, 81 La.L.Rev. at 122. Ohio has witnessed a similar decline, with just .9 percent of civil claims reaching trial in the first place, and an even smaller subset going before a jury. The Supreme Court of Ohio, *2019 Ohio Courts Statistical Summary*, 29, https://www.supremecourt.ohio.gov/Publications/annrep/19OCSR /2019OCS.pdf (accessed April 8, 2021). Commentators disagree on the causes of this phenomenon. One could blame the proliferation of alternative dispute resolution, the potential inconvenience of a jury trial that counsel or courts may wish to avoid, or an increased judicial receptivity to dispositive motions like summary judgment. *See, e.g.,* Diamond and Salerno, 81 La.L.Rev. at 122-125. Judicial restrictions of the right also factor into the equation. Regardless, we can quibble about the causes, but

17

not the results: our courtrooms are far from flooded with jury trials. The civil litigant who presents her case to a jury is an aberration in this day and age. And we, the courts, ought to pay special attention—lest we pave the way for the extinction of this celebrated right.

{**¶35**} Let's start, as we must, with the language of our Constitution. The Ohio Supreme Court instructs that, "in construing the Ohio Constitution, our duty is to determine and give effect to the intent of the framers as expressed in its plain language * * * ." *City of Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 17, citing *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, 916 N.E.2d 462, ¶ 50. "We give undefined words in the Constitution their usual, normal, or customary meaning," and must not deviate from " 'the well-established rule that the plain language of the enacted text is the best indicator of intent.' " *Id.*, quoting *Nixon v. United States*, 506 U.S. 224, 232, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993). Ohio's constitutional right to a jury trial in civil cases stems from Article I, Section 5 of the Ohio Constitution, which sweeps with broad language:

> The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.

Except for the 1912 addition of the clause authorizing jury verdicts by a three-fourths majority (which is irrelevant to our present inquiry), the text of Ohio's modern jury trial right remains identical to the guarantee of our state's very first Constitution: "That the right of trial by jury shall be inviolate." Article VIII, Section 8, Ohio Constitution of 1802.

{¶36} Our Constitution's invocation of the word "inviolate" in Section 5, Article 1 was designed not only to protect the jury right, but to highlight its significance. *See Butler*, 92 Ohio St.3d at 372, 750 N.E.2d 554 ("It is difficult to imagine a more forceful way of saying that the right to trial by jury should in no way be infringed."). The term can be traced to James Madison's presentation of the proposed federal Bill of Rights to the House of Representatives, in which he proclaimed the civil jury trial to be "one of the best securities of the rights of the people [which] ought to remain inviolate." 1 Few, *In Defense of Trial by Jury*, 74 (1993). At the adoption of Ohio's current Constitution in 1851, the word inviolate meant "unhurt; uninjured; unprofaned; unpolluted; unbroken." Noah Webster, *Dictionary of the American Language* (1828), http://webstersdictionary1828.com/ Dictionary/inviolate (accessed April 19, 2021). *See Websters Third New International Dictionary* 1190 (1993) (defining "inviolate" as "free from change or blemish, pure or unbroken."); *City of Cleveland* at ¶ 21 ("In giving undefined words in the Constitution their usual, normal, or customary meaning, we rely on their dictionary definitions."). It is difficult to conceive of a more expansive, protective term.

{¶37} Indeed, only one other provision in our state Bill of Rights uses the term "inviolate" to describe a constitutional guarantee: Article I, Section 19, which provides that "[p]rivate property shall ever be held inviolate, *but subservient to the public welfare.*" (Emphasis added.) This provision shows that the drafters of the Ohio Constitution knew how to impose qualifiers and limitations on an inviolate right if they so desired. And even where such qualifiers exist, the Ohio Supreme Court interpreted the word "inviolate" (in the context of Section 19) to connote a "strongly protected" right, one which "must be trod upon lightly, no matter how great

the weight of other forces." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 38. But the framers elected to include no such exception or limitation upon the right of trial by jury.

{¶38} Read in isolation, therefore, our Constitution's guarantee that the right to jury trial "shall be inviolate" presents a ringing endorsement of the jury's central role in both Ohio's judicial system and our democracy. Read in context of other constitutional provisions protecting the same right, the breadth of Section 5, Article 1 of the Ohio Constitution proves even more remarkable. This is because the vast majority of state constitutional provisions describing the jury trial right use narrower language than our own. A few states simply forgo the civil jury right and limit their constitutional jury trial guarantee to criminal cases. *See, e.g.,* Colorado Constitution, Article II, Section 23 ("The right of trial by jury shall remain inviolate in criminal cases * * * ."). Others explicitly tie the civil jury right to a specific time period in the state's history. In Maine, for instance, the jury right is available "except in cases where it has heretofore been otherwise practiced." Maine Constitution, Article I, Section 20. Alaska "preserve[s]" the right "to the same extent as it existed at common law." Alaska Constitution, Article I, Section 16. Many states use some form of Ohio's "inviolate" descriptor, but modify the right with a temporal limit. One popular phrasing preserves the jury trial right "*as heretofore*" enjoyed or practiced. *See* Delaware Constitution, Article I, Section 4; Illinois Constitution, Article I, Section 13; Missouri Constitution, Article I, Section 22(a); New Mexico Constitution, Article 2, Section 12; New York Constitution, Article 1, Section 2; Pennsylvania Constitution, Article 1, Section 6. Another phrasing echoes Madison and guarantees that the right of trial by jury "shall *remain* inviolate," which arguably connotes a right anchored in a particular time period. *See* Alaska Constitution, Article I, Section

20

11; Arizona Constitution, Article II, Section 23; Arkansas Constitution, Article II, Section 7; Connecticut Constitution, Article I, Section 19; Georgia Constitution, Article I, Section 1; Idaho Constitution, Article I, Section 7; Indiana Constitution, Article I, Section 20; Iowa Constitution, Article I, Section 9; Minnesota Constitution, Article I, Section 4; Mississippi Constitution, Article III, Section 31; Montana Constitution, Article II, Section 26; Nebraska Constitution, Article I, Section 6; New Jersey Constitution, Article I, Paragraph 9; Oregon Constitution, Article I, Section 17; Rhode Island Constitution, Article I, Section 15; South Dakota Constitution, Article VI, Section 6; Tennessee Constitution, Article I, Section 6; Texas Constitution, Article I, Section 15; Washington Constitution, Article I, Section 21; Wisconsin Constitution, Article I, Section 5. In contrast to these constitutional provisions, Ohio's "*shall be inviolate*" language stands out for both its breadth and its simplicity. It underscores that our framers wished us to look forward—and not back—to protect the jury trial right as the history of our state unfolded.

{¶39} Nor was this comparatively broad approach to the jury right an accident. At the 1850 Ohio Constitutional Convention, a draft revision of (what is now) Section 5 circulated that would have borrowed the temporal language used in several states: "The right of trial by jury as heretofore used and herein provided shall be inviolate." 2 Reports of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio, 1850–1851, 326 (1851). A delegate objected to the inclusion of "as heretofore used and herein provided," insisting that:

> he thought the clause dangerous, as in effect it would place in the hands of the Legislature the power, by instituting new modes of proceeding, to take away the trial by jury.

21

*Id.* Moments after this warning of legislative tampering, the Convention voted to eliminate "as heretofore used and herein provided" from Section 5, leaving us with the present language: "The right to trial by jury shall be inviolate." *Id.* Our framers, in short, made a conscious choice to adopt one of the broadest jury trial rights in the nation, precisely because they feared a gradual erosion of the jury right through legislative meddling.

{¶40} Early Ohio courts did not hesitate to enforce the breadth of our jury-trial guarantee. Just a year after the 1912 revision of Article I, Section 5, the Ohio Supreme Court proclaimed that "[t]he right of trial by jury should be as inviolate in the working of our courts as it is in the wording of our Constitutions." *Gibbs v. Village of Girard*, 88 Ohio St. 34, 47, 102 N.E. 299 (1913). It considered the jury trial a "birthright" of our founders and the "corner-stone" of state governments, and warned against any "sinister and indirect invasion and usurpation of the right of trial by jury." *Id.* at 39, 43. Any "legislative act impairing" the right to trial by jury, *Gibbs* admonished, "would be clearly unconstitutional." *Id.* at 43. "How, then, can a judicial order or judgment that indirectly but most effectually befeats the right of trial by jury, be otherwise than an invasion and violation of a party's rights?" *Id.* *Gibbs* rejected a trial court's grant of a directed verdict in a factually-contested negligence case, emphasizing that "[t]he right of trial by jury, being guaranteed to all our citizens by the Constitution of the state, cannot be invaded or violated by either legislative act or judicial order or decree." *Id.* at paragraph two of the syllabus. "So long as the trial by jury is a part of our system of jurisprudence, its constitutional integrity and importance should be jealously safeguarded." *Id.* at 47.

{¶41} Our rhetorical enthusiasm for the jury trial right has not cooled over the ensuing decades. We have labeled the jury trial "the crown jewel of our liberty,"

" 'the most cherished institution of free and intelligent government that the world has ever seen,' " and the " 'best institution for the administration of justice ever devised by the mind of man.' " *Butler*, 92 Ohio St.3d at 371, 750 N.E.2d 554, quoting 1 Few, *In Defense of Trial by Jury*, 74 (1993). "For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege." *Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 284, 188 N.E. 1 (1933), citing *Martin v. Windsor Hotel Co.*, 70 N.Y. 101 (1877). The jury trial right remains "one of the most fundamental and long-standing rights in our legal system." *Arbino,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 31.

{¶42} Of course, our oratory is one thing; our precedent is another. But before I move on to the (mis)match between our prose and our practice, it is worth lingering for a moment on the significance of what the jury trial actually *does.* The jury trial takes a critical judicial function—fact-finding in disputes between adverse parties—out of the hands of judges and legislators, and places it into the hands of our citizens. This direct shift of governmental power from judicial officials and to ordinary people is what makes the jury trial "one of the most fundamentally democratic institutions in the history of the human race." *Butler,* 92 Ohio St.3d at 371, 750 N.E.2d 554. And of course, a grant of power directly to the people necessarily restricts the powers of the courts. This constraint of the judiciary is purposeful: it reflects our founders' concerns about judicial "bias" and an "overreaching judiciary." *Arbino* at ¶ 119, 126 (Cupp, J., concurring). *See* Letter of July 19, 1789, from Thomas Jefferson to the Abbe Arnoux (reprinted in 5 Kurland & Lerner, *The Founders' Constitution*, 364 (1986)) ("permanent judges acquire an Esprit de corps, that being known they are liable to be tempted by bribery, that they are misled by favor, by relationship, by a spirit of party, by a devotion to the

Executive or Legislative; * * * and that the opinion of 12 honest jurymen gives still a better hope of right."). A participant at the 1850 Ohio Constitutional Convention lauded the jury trial as "a happy and patriotic adaptation to elude the force of oppression, by the decrees of venal and subservient judges," the "only means then devised to resist tyranny and the tools of tyrants," and "the palladium of [Ohioans'] civil rights." 2 Reports of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio, 1850–1851, 191 (1851). The core text of our constitutional guarantee—that the jury trial right "shall be inviolate"—has not changed in the nearly 175 years since that convention.

{¶43} But the right to trial by jury is not just a constraint on the judiciary; it also restrains the legislative branch. *See Gibbs,* 88 Ohio St. at 44, 102 N.E. 299 ("A legislative act impairing [the jury right] would be clearly unconstitutional."); *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 421, 633 N.E.2d 504 (1994) (the " 'right to trial by jury * * * cannot be invaded or violated by either legislative act or judicial order or decree.' "), quoting *Gibbs* at paragraph two of the syllabus. The General Assembly cannot "impair[] the traditional function of the jury" by removing protected matters from the jury's fact-finding province. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557, 644 N.E.2d 397 (1994). Such legislative action is unconstitutional—and for good reason. *Id. See Gibbs* at 44. The jury trial is not an ancillary feature of our judiciary, or an antiquated procedural device. *Cleveland Ry. Co.,* 127 Ohio St. at 284, 188 N.E. 1. It is an integral, substantive part of our delicate system of inter-branch checks and balances, which functions as a "bulwark against tyranny and corruption" and a "safeguard too precious to be left to the whim of the sovereign." *Parklane,* 439 U.S. at 343, 99 S.Ct. 645, 58 L.Ed.2d 552 (Rehnquist, J., dissenting). "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place

in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

{¶44} With this backdrop of a constitutional right of transcendent importance, and a democratic tool to keep the judiciary and legislature in check, we should view any infringement on the jury right—judicial or otherwise—with deep suspicion.

II.

{¶45} Ohio judicial opinions addressing the right to trial by jury traditionally begin their analysis with homage to its history and importance. Obviously, I have followed this well-trod path. But here, I must break with the pattern of my predecessors to identify a disturbing trend: No matter how effusive our praise of the jury trial, Ohio courts are complicit in a long campaign to corral and undermine this supposedly "inviolate" right.

{¶46} Once an Ohio court finishes singing the obligatory praises of the jury trial, its next move has become painfully predictable: "The right to a jury trial is not, however, absolute." *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22. *See Arbino,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 32; *Butler,* 92 Ohio St.3d at 372, 750 N.E.2d 554 ("Section 5, Article I of the Ohio Constitution does not guarantee a jury trial in all cases."); *Sorrell,* 69 Ohio St.3d at 421, 633 N.E.2d 504 (same); *Kneisley v. Lattimer-Stevens Co.*, 40 Ohio St.3d 354, 356, 533 N.E.2d 743 (1988) ("There is no *right* to a jury trial, however, unless that right is extended by statute or existed at common law prior to the adoption of our state Constitution.") (Emphasis in original.) We proceed to qualify this "fundamental" and "inviolate" right by insisting that "Section 5, Article

25

I guarantees a right to a jury trial only for those causes of action in which the right existed in the common law when Section 5 was adopted." *Arbino* at ¶ 32. In so decreeing, our courts do not interpret the plain language of Section 5, its context amongst the constitutional language of our sister states, or the overarching purpose of the right. Instead, we simply point to the 1929 Ohio Supreme Court case *Belding v. State,* which held that a jury right attaches only "in cases where under the principles of the common law it existed previously to the adoption of the Constitution." *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 397, 169 N.E. 301 (1929). Without citing *anything* (neither precedent nor history), the *Belding* court insisted that "[i]t was not [] the intention of the framers of that clause of the Bill of Rights to guarantee the right of trial by jury in all controversies." *Id.* at 396. Needless to say, *Belding* did not divine these points from the language of Section 5—it just cut its discoveries from whole cloth. Nor is it clear that the *Belding* court intended its holding to extend much beyond the narrow context of the family-law proceeding before it. *See id.* at 396-397 (characterizing the case as a "special proceeding[]" comparable to "alimony proceedings" and distinguishable from "actions for money, where the claim is an ordinary debt"). Nonetheless, the Ohio Supreme Court consistently utilizes *Belding* as the springboard justifying a retreat from the plain language of Section 5. *See, e.g., Arbino* at ¶ 32.

{¶47} Based on *Belding*'s judicially-grafted limitation on a broad constitutional right, Ohio's constitutional jury trial right is now available only "in those cases where it existed previous to [the Constitution's] adoption." *Belding* at paragraph one of the syllabus. *See Arrington* at ¶ 85 (Pfiefer, J., dissenting) (*Belding*'s limitation of the civil jury right "is not a creature of our Constitution, but instead emerged from this court's case law."). But this crabbed historical standard

presents problems in practice. The common law, of course, is not static. *See Funk v. United States,* 290 U.S. 371, 383, 54 S.Ct. 212, 78 L.Ed. 369 (1933) ("It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."). The common law evolves—and in the past, the Ohio Supreme Court has recognized that Ohio's constitutional jury trial right evolves with it. *See Sorrell* at 422 ("Given that negligence actions, which evolved from the common-law action of trespass on the case, and battery actions existed at common law at the time of the adoption of our state Constitution, Section 5, Article I is an inviolate and fundamental right that applies to the actions herein."). Common law causes of action are regularly codified, expanded, or contracted by the General Assembly. *See Stetter v. R.J. Corman Derailment Servs., LLC,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 36 (the General Assembly has "the power to 'alter, revise, modify, or abolish the common law' "), quoting *Arbino* at ¶ 131 (Cupp, J., concurring). The General Assembly's power to modify the common law, however, cannot carry with it the power to override the Ohio Constitution, including the constitutional right to a jury trial. *Id.* ("[T]he General Assembly possesses the authority to enact any law that does not conflict with the Ohio and United States Constitutions."); *Gibbs,* 88 Ohio St. at 43, 102 N.E. 299 ("A legislative act impairing [the jury right] would be clearly unconstitutional."). Accordingly, it makes good sense that the Ohio Supreme Court has rejected several attempts by the General Assembly to impose statutory restrictions on the jury right in claims sounding at common law. *See Zoppo*, 71 Ohio St.3d at 557, 644 N.E.2d 397 (holding former R.C. 2315.21(C)(2) unconstitutional for "impair[ing] the traditional function of the jury" in a tort action); *Sorrell* at 422 (holding former R.C. 2317.45 unconstitutional because it "encroache[d] upon the

27

fundamental and inviolate right to trial by jury"); *Galayda v. Lake Hosp. Sys., Inc.*, 71 Ohio St.3d 421, 426, 644 N.E.2d 298 (1994) (holding former R.C. 2323.57(C) unconstitutional for "invad[ing] the jury's province to determine damages").

{¶48} The inevitable result of this evolution is that the nineteenth-century common law looks very different than today's mixture of common law and statutory claims. And fundamental tension surfaces in our case law between the ongoing evolution of common law claims and *Belding*'s (apparently) frozen-in-amber approach to the jury right. As we peer backwards over the course of history to ascertain the genesis of a cause of action, the Supreme Court instructs us that the "assertion of a constitutional right to a jury necessarily entails inquiry into whether the common law recognized the *type of claim* [the plaintiff] presents." (Emphasis added.) *Arrington*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 22. If the "type of claim" the plaintiff presents is a claim "in which the [jury] right existed before the adoption of the constitutional provision providing the right," then the plaintiff enjoys a constitutional jury right. *Id.* "If not, Section 5, Article I of the Ohio Constitution is inapposite." *Id.*

{**¶49**} The test seems simple enough at first blush. But in practice, this approach has proven rife with uncertainty. Take the Eighth District decision that the majority here follows—with a narrow lens, it seemingly jettisons the "type of claim" analysis and inquires only whether this specific statutory claim "existed" at common law. *See Collier-Hammond*, 2020-Ohio-2716, 154 N.E.3d 364, at ¶ 22 ("[B]ecause R.C. 2743.48 did not exist until 1986 * * * Section 5, Article I of the Ohio Constitution does not preserve a right to a jury trial for the type of action filed against the State.").[3] We know it can't be that simple. But Ohio's ad-hoc approach to the question of common-law analogues, combined with our blind deference to *Belding,* encourages this leisurely sort of chipping-away at Ohio's jury trial right. A broader view could encompass any claim that finds its roots in a common law cause of action, including all claims that sound in tort. *See, e.g., Kneisley*, 40 Ohio St.3d at 356-357, 533 N.E.2d 743 ("The modern concept of intentional tort evolved from the common-law action of trespass. * * * We thus determine that the right to a jury trial in trespass actions existed in this state at common law, and now extends to its progeny—in this case, intentional tort actions."). Or perhaps "type of claim" refers to all claims "requir[ing] resolution of factual issues which are triable to a jury in *comparable* civil actions." (Emphasis added.) *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992). The field of possibilities is wide, and the contradictions between these approaches are only growing as we become further removed from the nineteenth century and courts struggle to evaluate judicial limitations on a celebrated right.

---

[3] In fairness, the Eighth District seemed frustrated with the state's efforts to "have it both ways" because the state took inconsistent positions and actually requested a jury trial in another case. *Collier-Hammond* at ¶ 24.

**{¶50}** A constitution, of course, is designed to endure for ages. Yet as our modern causes of action (many statutory, but some still common law) look more and more different than their common law ancestors, ambiguity in our case law provides courts with ammunition to erode this constitutional right (and shrug off a critical limitation on judicial power). The modern litigant who asserts a jury trial right faces a veritable maze of standards, some compatible and some conflicting. Should she argue that her cause of action is at law, rather than at equity? *See Dibert v. Carpenter*, 2017-Ohio-689, 85 N.E.3d 419, ¶ 67 (2d Dist.) (holding that the litigant had no jury trial right, even though "the requested redress for [her] claims was monetary, [because] the nature of the dispute arose in equity."). Or will her claim be denied regardless because its elements are "governed by statute?" *Sachdeva v. Conrad*, 10th Dist. Franklin No. 01AP-406, 2001WL1340750, *3 (Nov. 1, 2001) ("[S]ince appellant's rights regarding workers' compensation benefits are governed by statute and not by common law, appellant does not have a right to a jury trial under the Ohio Constitution * * * ."). Is the relevant inquiry whether the claim was "known" at common law, or whether the claim "existed" at common law—and how close of a common law parallel do those terms require? *See Welborn-Harlow v. Fuller,* 6th Dist. Wood No. WD-11-013, 2013-Ohio-54, ¶ 15 ("In our view, an action seeking a CSPO is a statutory action *unknown* at common law. Accordingly, appellant had no right to a jury trial * * * .") (Emphasis added.); *Collier-Hammond* at ¶ 22 ("R.C. 2743.48 did not *exist* until 1986. Thus, Section 5, Article I of the Ohio Constitution does not preserve a right to a jury trial for the type of action filed against the State.") (Emphasis added.). Our amorphous standards make it harder for litigants to bring jury trial claims, and easier for courts to swat those claims down. Surely, the framers of the Ohio Constitution were not so sloppy as to formulate a jury

30

right that would erode continuously over time. That doesn't sound like any definition of "inviolate" that I've seen. But if we strictly construe *Belding's* rule that a jury right attaches only to claims existing at common law at the adoption of the Ohio Constitution, then we end up with a standard that renders "the Ohio Constitution * * * inapposite" for an ever-increasing number of claims. *See Arrington,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 22.

{¶51} A strong case could be made that the Supreme Court should free itself of *Belding*'s non-textual limitation and return to first principles. But the force of stare decisis looms large, and I therefore will assume that the *Belding* court correctly anchored Ohio's jury trial right in the distant past. This begs more questions than it answers, because we must still decide how broadly (or narrowly) to interpret the *Belding* limitation, and how to differentiate between causes of action that are (or are not) sufficiently analogous to the common law to evoke a constitutional jury trial right. The Supreme Court has never articulated a clear standard for the "type of claim" that qualifies as a common law analogue, which creates the problems I've highlighted above and helps explain the crux of my disagreement with the majority. The majority draws a relatively fine distinction between false imprisonment (which they acknowledge retains a constitutional jury trial right) and wrongful imprisonment (which they find does not). This distinction allows a trial court to withhold a jury right for R.C. 2743.48 claims while still passing constitutional muster. As explained below, I disagree with the majority's application of the "type of claim" analysis based on both our precedent and the history of this fundamental right. However, I acknowledge that the lack of precision in our existing standard gives courts wide latitude in assessing whether a claim warrants the right to a jury trial. This discretion poses a real danger to the expansive jury right embodied in

31

Section 5: it essentially grants the judiciary a license to do away with a critical limit on our own power. Accordingly, it is past time for the Supreme Court to craft a workable standard that remains faithful to the language of our Constitution, our precedent, and the purposes undergirding the right. Several decisions from our sister states can help illuminate this inquiry.

III.

{¶52} Many other states—usually interpreting narrower constitutional guarantees than our own—have limited the jury trial right to claims existing at common law at the adoption of their state constitutions. Thankfully, some are further than us along the path to recognizing and addressing the challenges of this approach. *See Norwood,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, at ¶ 76 (turning to out-of-state opinions as guidance in interpreting Ohio's Constitution).

{¶53} Take Minnesota, for example. Its state constitution guarantees that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minnesota Constitution, Article I, Section 4. The Minnesota Supreme Court—like the Ohio Supreme Court—interprets this language to protect a jury right in the "type of action" for which the right existed at common law. *United Prairie Bank–Mountain Lake v. Haugen Nutrition & Equip., LLC,* 813 N.W.2d 49, 53 (Minn.2012). But the court did not stop there. Instead, it recognized that its "shall remain inviolate" provision "does not freeze the right to a jury trial to only those causes of action that existed in 1857," and developed a two-part test to ascertain whether a modern, statutory cause of action carries a constitutional jury trial right. *Id.* at 53-54. *See Abraham v. Cty. of Hennepin,* 639 N.W.2d 342, 349 (Minn.2002) ("The constitution is not frozen in time in 1857,

32

incapable of application to the law as it evolves."). First, Minnesota courts consider the "substantive nature" of the plaintiff's claim, including its historical roots and any connections to the common law. *United Prairie* at 54-55. Next, they examine the "nature of the remedy sought," with particular emphasis on whether the plaintiff seeks monetary damages. *Id.* at 56. This test applies even to "statutory claims that were not available at the time the constitution was adopted," and a jury right will be found when the modern statutory claim functions as a "common law analog." *Schmitz v. U.S. Steel Corp.,* 852 N.W.2d 669, 674, 676 (Minn.2014).

{¶54} Minnesota is not the only state to embrace a two-part test for claims that retain a constitutional jury right. The Wisconsin Supreme Court—interpreting another "shall remain inviolate" jury trial provision—has declared that "a party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848; and (2) the action was regarded as at law in 1848." *Village Food & Liquor Mart v. H & S Petroleum, Inc.*, 254 Wis.2d 478, 647 N.W.2d 177 (2002). *See* Wisconsin Constitution, Article I, Section 5. Notably, the court fashioned this test in direct response to a court of appeals' (erroneous) conclusion that the jury trial right attached to a statutory claim only when the statute "codifie[d] a claim that *existed* in the common law." (Emphasis added.) *Id.* at 180. Wisconsin's highest court found this standard "too narrow[]" to encompass the state's full jury right. *Id.* And the court later explained that it had crafted the "existed, was known, or was recognized" standard in an effort to reach claims that were " 'essentially counterparts' to the common law." *State v. Schweda*, 303 Wis.2d 353, 736 N.W.2d 49, 54-45 (2007), citing *Village Food*. In applying this test, the Wisconsin Supreme Court concluded that the statutory claim

33

at issue bore sufficient similarities to certain claims chronicled in Blackstone's *Commentaries* such that they were all of the same "nature." *Village Food* at 184. "These offenses [were] clearly forerunners of modern unfair trade practice statutes," even though the common law claims "were all criminal offenses under the common law, rather than private causes of action." *Id.* at 184-185. Since the plaintiff's modern claim could be traced—even loosely—to a common law "forerunner," the court concluded that it carried a jury right. *Id.* at 186.

{¶55} In a variation on a theme, New Jersey courts interpret their state's jury right by considering "not only the nature of the relief—the remedy—but also the historical basis for the cause of action." *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 117 A.3d 1221, 1228 (2015). *See* New Jersey Constitution, Article 1, Paragraph 9 ("The right of trial by jury shall remain inviolate."). The "historical basis" portion of the test asks "whether the cause of action *resembles* one that existed in common law." (Emphasis added.) *Lajara* at 1228. Moreover, New Jersey courts consider "the nature of the remedy * * * ' "the most persuasive factor" ' " in the analysis, elevating it above the need for a common-law parallel. *Id.,* quoting *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 59 A.3d 561, 569 (2013), quoting *Weinisch v. Sawyer*, 123 N.J. 333, 344, 587 A.2d 615 (1991). Like the federal jury trial right, New Jersey's jury trial right "extends 'beyond the common-law forms of action recognized' at the time of the Constitution's ratification to new statutory causes of action, provided those statutes 'create legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.' " *Lajara* at 1228, quoting *Curtis v. Loether*, 415 U.S. 189, 193-194, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Based on that standard, the New Jersey court found a constitutional jury trial right in a statutory claim that "resemble[d]" a claim for common law fraud

34

notwithstanding "the lack of complete symmetry" between the statutory claim and the closest common law theory. *Id.* at 1231-1232.

{¶**56**} Each of these tests shares a few key features. First, all of them appreciate that the jury trial inquiry cannot be rigidly reduced to the question of which claims "existed" (or didn't) at nineteenth century common law. This shared feature reflects the fact that a strict, historically-limited jury trial inquiry will cause the jury trial right to fade over time—the opposite of what our nation's founders intended. Many states embrace the wisdom of a flexible jury right for this very reason. As the Washington Supreme Court observed, "a method of construing a lasting constitutional right" that leads the right to "diminish over time * * * * makes little sense." *Sofie v. Fibreboard Corp.*, 112 Wash.2d 636, 771 P.2d 711, 718 (1989). "It would defeat the intention of our constitution's framers to interpret an essential right so that it slowly withers away." *Id. See, e.g., State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 86 (Mo.2003) ("The question is whether the proceeding 'is analogous to an action at common law, or whether it [is] in the nature of a suit in equity.' "); *Newly Weds Foods, Inc. v. Westvaco Cor*p., 14 Mass.L.Rptr. 278, 2001 WL 1809810, *2 (Dec. 7, 2001) ("Massachusetts extends the jury trial right beyond the scope of the federal standard because it formulates a more dynamic model for assessing a party's right to a jury.").

{¶**57**} Next, each standard places substantial weight on the nature of the remedy sought, with New Jersey even elevating the "nature of the remedy" over the "historical basis" part of its analysis. This emphasis on remedy makes good sense, because it both corresponds with the actual function of the jury and hearkens to the historic distinction between law and equity. The jury trial is "[d]esigned to prevent government oppression and to promote the fair resolution of factual issues."

*Arrington,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 21. The proper assessment and award of damages is a quintessential question of fact, and for centuries, the jury has been "the machinery by which this task [i]s performed." *Kneisley*, 40 Ohio St.3d at 356, 533 N.E.2d 743, quoting Deiser, *The Development of Principle in Trespass*, 27 Yale L.J. 223 (1917); s*ee Arbino,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 34 ("the extent of damages suffered by a plaintiff is a factual issue"). Shortly after the adoption of Ohio's 1851 Constitution, the Ohio Supreme Court characterized the right to trial by jury as "the right of either party, *in an action for the recovery of money only*, to demand that the issues of fact therein be tried by a jury." (Emphasis added.) *Dunn v. Kanmacher*, 26 Ohio St. 497, 503 (1875). Preserving the jury right for claims that sound in law (rather than equity) prevents "outside interference" by the judiciary and legislature with the jury's critical "fact-finding function." *See Arbino* at ¶ 35.

{¶58} The above, out-of-state standards can supply the raw materials to add precision to Ohio's "type of claim" test. We can look, not just to claims that "existed" in substantially identical form at common law, but to claims that were comparable or substantively similar to those recognized at common law. *Contrast Collier-Hammond,* 2020-Ohio-2716, 154 N.E.3d 364, at ¶ 22 *with Schweda,* 736 N.W.2d at 71. We can respect the Ohio Supreme Court's past emphasis on the *function*—rather than form—of the jury right by asking whether a claim essentially acts as a "counterpart" or extension of the common law. *See Arbino* at ¶ 35 ("Section 5, Article I of the Ohio Constitution clearly protects this fact-finding function from outside interference. Any law that prevents the jury from completing this task or allows another entity to substitute its own findings of fact is unconstitutional."); *Zoppo,* 71 Ohio St.3d at 557, 644 N.E.2d 397 (statute that "impairs the traditional

function of the jury" in a tort action is unconstitutional); *see also Schweda* at 71 (jury right attaches to claims that are " 'essentially counterparts' to the common law."). And we can circle back to our state's initial focus on the nature of the remedy. *See Dunn* at 502-503 ("[W]ithin the [jury] right thus secured is the right of either party, in an action for the recovery of money only, to demand that the issues of fact therein be tried by a jury."); *Lajara*, 222 N.J. 129, 117 A.3d at 1228. Most importantly, we can recognize that each of the sister-state tests recounted above stems from a jury trial guarantee that is theoretically *more limited* than the jury right in Ohio. Our state's founders chose to enshrine in our Constitution one of the broadest jury trial rights in the nation. To the extent that we insist that a historical inquiry is needed to interpret our state's jury trial right, that inquiry should be generous—at least as generous as the inquiry pursued in states with a narrower constitutional provision than our own.

{¶59} Keeping in mind the *Gibbs* court's admonition that we must "jealously safeguard[]" the jury right and the breadth of our constitutional mandate, I would err on the side of a broad application of Ohio's "type of claim" test. *See Gibbs,* 88 Ohio St. at 47, 102 N.E. 299. A broad application also makes sense in light of the fact that we, as judges, must tread carefully when curtailing a right designed to restrain *us*. The jury is a unique institution. Each individual jury is ephemeral in nature; its members conduct their service and then return to their lives in their communities. The jury does not have institutional permanence or power like other governmental institutions—it cannot defend itself from gradual encroachment or erosion. Instead, it trusts the grace of Ohio's judges to protect it. We must never lose sight of this fact.

IV.

{¶60} Now, let's turn to considering whether R.C. 2743.48 codified a "type of claim" that carries a jury trial right.

{¶61} First, I inquire whether Mr. McClain's claim for wrongful imprisonment functions as a modern counterpart or extension of a claim with roots at common law. Here, the best candidate for a common law analogue is the intentional tort of false imprisonment, which undoubtedly carried a jury trial right. *See Kneisley*, 40 Ohio St.3d at 357, 533 N.E.2d 743 ("[T]he right to a jury trial in trespass actions existed in this state at common law, and now extends to its progeny—in this case, intentional tort actions."). We must consider the historical development of both claims and ask whether it supports a link.

{¶62} Thankfully, Ohio Supreme Court precedent offers us guidance in this regard. The court recognized a common law claim of false imprisonment against state officials long before R.C. 2743.48 was enacted. In the 1918 case, *Brinkman v. Drolesbaugh*, for example, the court recognized that the state enjoyed a sovereign immunity defense to false imprisonment claims against state actors, but simultaneously delineated circumstances in which a false imprisonment claim might overcome that defense:

> Of course, if a magistrate issued a criminal warrant on an ordinary charge of slander against some man, which is not made an offense under the laws of the state of Ohio, and the officer served it and imprisoned some one, that would doubtless serve as a basis of action for false imprisonment, because there is no such offense, or if a magistrate issued a criminal warrant in a simple action for debt, and caused the police officer to serve the same. In both such cases it would

38

be most obvious that the magistrate acted entirely beyond his jurisdiction. The magistrate is not protected in such case. Neither is the officer serving his process.

*Brinkman v. Drolesbaugh*, 97 Ohio St. 171, 180, 119 N.E. 451 (1918). The *Brinkman* court defined the false imprisonment tort as "a *wrongful* or unlawful detention or restraint of one's liberty." (Emphasis added.) *Id.* at 174. It recognized that when a state official exceeded the lawful bounds of his authority, he could be liable for the false imprisonment tort. The practical utility of a false imprisonment claim against the state was severely diminished by the state's defense of sovereign immunity—but the claim was "recognized" at common law. Moreover, the Supreme Court confirmed the viability of *Brinkman*'s hypothetical false-imprisonment claim in the 1958 case *Minor v. Seliga,* holding that " 'where a justice of the peace, without authority of law, issues a warrant of arrest, both he and the person at whose instance he so acts are liable in an action for false imprisonment at the suit of the party illegally arrested by virtue of such warrant.' " *Minor v. Seliga,* 168 Ohio St. 1, 5, 150 N.E.2d 852 (1958) (reversing the trial court's dismissal of plaintiff's false imprisonment claim against a judge), citing *Truesdell v. Combs,* 33 Ohio St. 186 (1877).

{**¶63**} Better yet, in the 1991 case, *Bennett v. Ohio Dept. of Rehab. & Corr.*, the Ohio Supreme Court directly addressed the relationship between the common law tort of false imprisonment and then-new R.C. 2743.48. *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 111, 573 N.E.2d 633 (1991). The court explained:

[The state's sovereign] immunity derived from the law governing false imprisonment. As stated in *Diehl v. Friester*, "an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court,

39

unless it appear that such judgment or order is void." R.C. 2743.48 abolished this immunity for purposes of the state's liability to "wrongfully imprisoned individuals." In summary, R.C. 2743.48 does not replace the false imprisonment tort but, rather, supplements it to allow a recovery in some cases when recovery was not available before.

(Internal citations omitted.) *Bennett* at 110-111. Notably, the *Bennett* court characterized R.C. 2743.48 as a statutory "supplement" to the common law false imprisonment claim, one designed to "abolish [sovereign] immunity" and specifically derived "from the law governing false imprisonment." *Id.* This characterization of R.C. 2743.48 as a limited waiver of the defense of sovereign immunity—rather than a new statutory claim—echoes language in *Walden v. State* characterizing R.C. 2743.48 as "a waiver of the state's common-law sovereign immunity * * *." *Walden v. State*, 47 Ohio St.3d 47, 53, 547 N.E.2d 962 (1989).

{¶64} Following *Brinkman* and *Bennett,* I conclude without hesitation that a wrongful imprisonment claim under R.C. 2743.48 functions as a modern, statutory extension of the common law false imprisonment tort—and would hold that this is enough to satisfy Ohio's "type of claim" standard for a jury trial right. So far as R.C. 2743.48 operates as a "waiver of the state's common-law sovereign immunity" and a "supplement" to the common law false imprisonment claim, R.C. 2743.48 claims and false imprisonment claims hail from common origins. *See Walden* at 53; *Bennett* at 111. It would make no sense for the General Assembly to "abolish" the state's common law defense and "allow recovery" for a claim that was not known or recognized at common law. *See Bennett* at 111. Yes, R.C. 2743.48 involves a type of statutory waiver that may have "no parallel in the ancient dual system of law and equity." *Walden* at 53. But as noted above, our historical inquiry should be about

40

function—not form. While a statutory waiver of immunity might be a more modern concept, that fact fails to inform whether the underlying "claim" traces to the common law (and, by the way, *Walden* specifically disclaimed any analysis on the right to a jury trial, "as this question is not presented for our review," *id.* at fn.2).

{¶65} We also must recall that *Brinkman* described false imprisonment as including "wrongful * * * restraint of one's liberty." *Brinkman*, 97 Ohio St. at 174, 119 N.E. 451. After sifting through all the statutory legalese in R.C. 2743.48, that is the core essence of the statutory claim—the statute provides relief for a "wrongfully imprisoned individual." R.C. 2743.48(A). To Mr. McClain (if he prevailed on his claim), I suspect it matters not a whit whether he was wrongfully incarcerated based on a judge acting beyond his jurisdiction (as noted in *Brinkman*) or because the judge just erred and convicted the wrong man (R.C. 2743.48(A)(5)). Either way, he languished in prison when he shouldn't have been there.

{¶66} In the recent Tenth District case cited by the majority, the court held that "[f]alse imprisonment and wrongful imprisonment are distinct causes of action" that require a plaintiff to prove distinct elements. *Brandon v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 20AP-211, 2021-Ohio-418, ¶ 16. The court was not applying any version of a Section 5 constitutional analysis, so its conclusion sheds little light on the matter at hand. Regardless, the question should not be whether a microscope reveals that wrongful imprisonment and false imprisonment are the *same* claim, but rather, whether wrongful imprisonment is sufficiently *connected* to false imprisonment to function as a common law analogue. *See Lajara*, 222 N.J. 129, 117 A.3d at 1232 ("Perfect alignment between the elements of an IFPA claim and common-law fraud is not necessary to trigger the right to a jury trial."). According to *Bennett,* it is. And if we revoked the jury trial right every time the General Assembly

tinkered with a common law claim (or abolished certain defenses), we would be left with a shadow of this supposedly "inviolate" guarantee.

{¶67} Now we turn to the nature of the remedy sought. R.C. 2743.48 provides a "two-step process to *compensate* those who have been wrongfully imprisoned." (Emphasis added.) *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 10. First, the plaintiff must initiate "an action in the common pleas court seeking a preliminary factual determination of wrongful imprisonment." *Id.* Once declared a "wrongfully imprisoned individual," the plaintiff becomes eligible to recover money damages in the Court of Claims. *Id.* In short, R.C. 2743.48 recognizes a cause of action "to recover a sum of money." R.C. 2743.48(D). This fact-finding concomitant to monetary relief presents a classic form of legal relief that justifies a jury trial.

{¶68} Finally, let's think about the significance of the claim at hand, and whether—if we were in doubt—this claim would deserve the constitutional protection of a jury trial. If Mr. McClain is correct, and he is an innocent man, then the judicial system committed a grievous error. Part of the frailty of the human condition is that we don't like to admit mistakes. It's far easier for outsiders to appreciate our missteps. So what makes more sense—that Mr. McClain must ask a judge to rule that another judge was (unwittingly perhaps) a party to a miscarriage of justice? Or to have a jury of his peers evaluate that claim? Naturally, the latter.

{¶69} But this also illustrates the wisdom of our constitutional design. Our framers—just like the framers of other state constitutions—understood the jury as a check on both judicial and legislative power. What "type of claim" could be better-suited for a jury-check on the judiciary than a plaintiff's assertion that the judicial system failed? Mr. McClain asks for a jury to determine what might be the most

quintessential factual dispute in our legal system: actual innocence of a crime. This fact-finding function is what *Arbino* underscored must be protected at all cost. *See Arbino,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 35 ("Section 5, Article I of the Ohio Constitution clearly protects this fact-finding function from outside interference."); *Arrington,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 21 (noting that the jury trial right was designed "to promote the fair resolution of factual issues"). He seeks monetary relief to compensate for the deprivation of personal freedoms. Even if we thought that this common law "type of claim" question presented a close call, I cannot think of a better case for erring on the side of a broad jury trial right.

V.

{¶70} Today's decision is the culmination of a long, steady march by Ohio courts to erode the constitutional right to a jury trial. This journey has not only strayed from the plain text of our Constitution, but it has also substituted in its place a confusing analytical framework that, unless corrected, will only ensure a continued whittling away at the right. Our entire judicial system would benefit from a healthy dose of lay "common sense" and wisdom that the jury provides, perhaps now more than ever. I respectfully dissent because I would hold, as our Constitution proclaims, that the right of a jury trial in this state should remain "inviolate."

Please note:
     The court has recorded its own entry this date.